**Cheryl ANDERSON, individually and on behalf of Richard Anderson, deceased, and Katherine Elizabeth Anderson, Appellants,**

v.

**CITY OF SAN ANTONIO, Appellee.**

No. 04–02–00645–CV.

Court of Appeals of Texas, San Antonio.

June 25, 2003.

Concurring Opinion July 30, 2003.

Rehearing Overruled Oct. 1, 2003.

Warren Weir, Rosemarie Alvarado, San Antonio, for appellants.

William P. Durland, Amy M. Eubanks, Asst. City Attorney, San Antonio, for appellee.

Sitting: PAUL W. GREEN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

In this case, we determine whether the trial court erred by granting the City of San Antonio's motion to dismiss based on the doctrine of sovereign immunity.

On February 5, 2002, Cheryl Anderson, along with her daughter Katherine Elizabeth Anderson, filed a wrongful death suit against the City of San Antonio ("the City") based on services provided by emergency medical personnel of the San Antonio Fire Department. The City filed a motion to dismiss, arguing that the doctrine of sovereign immunity precluded the Andersons' action and deprived the district court of jurisdiction. After conducting a hearing on the City's motion, the trial court determined that because the Andersons failed to plead a cause of action under the Texas Tort Claims Act, the doctrine of sovereign immunity deprived it of jurisdiction over the suit.

The Andersons now appeal. In four points of error, the Andersons contend the trial court erred in granting the motion to dismiss because 1) the improper use of an electrocardiogram ("EKG") was negligent use of tangible personal property, as defined in section 101.021(2) of the Texas Civil Practice and Remedies Code; 2) the City does not enjoy immunity under section 101.055(3); 3) government employees are not immune from tort liability under section 101.056 if the character of the discretion they exercised is medical and not governmental; and 4) the negligent use of the EKG was the proximate cause of Richard Anderson's death.

### BACKGROUND

At approximately 3:00 a.m. on June 16, 2001, Emergency Medical Technicians ("EMTs") from the San Antonio Fire Department were dispatched to the Anderson residence after a request for emergency medical assistance for Richard Anderson. The Andersons allege that when the EMTs arrived, Richard was experiencing severe chest pains and his left arm was numb. The City contends that during the EMTs' examination of Richard, they performed two EKG tests, using a three-lead EKG machine. The parties dispute whether those results were normal. The City contends that because the results of the exam were normal, the EMTs determined that Richard did not need to be transported to the hospital. The Andersons argue that the EMTs failed to transport Richard to the emergency room because they negligently misinterpreted the EKG and ignored his pleas that he was having a heart attack.

Later that same day, at approximately 5:30 p.m., Richard again experienced chest pains, and for a second time, the family called for EMT assistance. This time, Richard was transported to the hospital. He died later that same night. Approximately eight months later, the Andersons filed this wrongful death and survival ac-

tion alleging that the negligent use of the EKG machine resulted in Richard's death. The trial court subsequently dismissed the suit for lack of jurisdiction. The Andersons now appeal.

## STANDARD OF REVIEW

 The City's motion to dismiss is the functional equivalent of a plea to the jurisdiction. *See Dahl v. State,* 92 S.W.3d 856, 860 (Tex.App.-Houston [14th Dist.] 2002, no pet.). A plea to the jurisdiction is a dilatory plea intended to defeat a cause of action without regard to the merits of the asserted claims. *Bland I.S.D. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). We review a trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

## DISCUSSION

### A. Claims Against the City

The Andersons' primary complaints on appeal arise from the trial court's application of section 101.021(2) of the Texas Tort Claims Act ("TTCA"). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). Specifically, the Andersons argue that the EMTs' improper use of the EKG machine constitutes a misuse of tangible personal property under section 101.021(2). The City responds that the Andersons have failed to sufficiently plead waiver of sovereign immunity.

 In Texas, a governmental unit[1] is immune from suit and liability unless the state consents. *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex. 2003). Governmental immunity from suit

defeats a court's subject matter jurisdiction. *Id.* In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Id.* To determine if the plaintiff has met that burden, we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issues, the evidence submitted by the parties. *Id.*

Whether a governmental unit is immune from liability for a particular claim depends entirely on statute. Here, the Andersons assert that the state has waived immunity pursuant to section 101.021(2) of the TTCA.[2] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). This section provides that "[a] governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.*

 To determine whether the state has waived sovereign immunity pursuant to section 101.021(2), we must decide whether Richard Anderson's death arose from the EMTs' "use" of the EKG machine. The supreme court has defined "use" as "to put or bring into action or service; to employ for or apply to a given purpose." *Whitley,* 104 S.W.3d at 542. According to the Andersons, Richard Anderson's death was proximately caused (1) by the EMTs' "negligent misinterpretation of the EKG data" and (2) by the EMTs' "negligence in failing to cause the EKG machine to produce an EKG strip."

Relying on *Salcedo v. El Paso Hospital District,* 659 S.W.2d 30 (Tex.1983) and *Ba-*

---

1. Under the TTCA, a city is a governmental unit. TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon Supp.2003).

2. There is no question that the operation of the emergency ambulance service is a governmental function, not a proprietary one. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(18) (Vernon Supp.2003).

*ston v. City of Port Isabel,* 49 S.W.3d 425 (Tex.App.-Corpus Christi 2001, pet. denied), cases that are factually similar to this case, the Andersons contend that the allegations raised in their petition are sufficient to state a cause of action under section 101.021(2).

In *Salcedo,* 659 S.W.2d at 31, the emergency room physician administered an EKG test to the plaintiff who was experiencing severe chest pains. *Id.* Although the results of the test showed a classic pattern of a heart attack, the physician released the plaintiff's husband. *Id.* The plaintiff's husband later collapsed after returning home and was pronounced dead upon returning to the emergency room. *Id.* When the plaintiff filed suit against the hospital, she alleged that the hospital "misused the equipment and tangible property then and there belonging to said defendant, by improperly reading and interpreting the electrocardiogram graphs and charts produced by such equipment." *Id.* at 32. The trial court dismissed the suit, holding that the plaintiff's claims did not fall within any exception to the hospital's general immunity from suit. *Id.* at 31. The court of appeals affirmed the trial court's judgment. *Id.* The Texas Supreme Court, however, reversed and held that the plaintiff had sufficiently alleged a misuse of tangible personal property under the TTCA. *Id.* at 32–33.

In *Baston,* 49 S.W.3d at 427, EMTs responded to an emergency assistance call for the decedent. When the EMTs arrived, they used an EKG monitor to determine if the decedent was experiencing cardiac problems. *Id.* According to the plaintiffs, the EMTs misinterpreted the reading of the EKG machine, reading the results as normal when the machine actually indicated the decedent was suffering from cardiac problems. *Id.* Not having been transported to the hospital, the decedent died later that morning. *Id.* The City of Port Isabel filed a plea to the jurisdiction, claiming sovereign immunity barred the suit. *Id.* at 426–27. The trial court granted the plea, holding that the plaintiffs' claims did not raise any claims for which immunity was waived under the TTCA. *Id.*

On appeal, the *Baston* plaintiffs argued that the trial court erred when it dismissed the suit because under *Salcedo,* the misuse of an EKG machine qualifies as a misuse of tangible personal property under section 101.021(2). *Baston,* 49 S.W.3d at 428. In response, the City of Port Isabel argued that *Salcedo* could no longer be relied upon in light of the Texas Supreme Court's holding in *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339 (Tex.1998). The Thirteenth Court of Appeals rejected the City of Port Isabel's argument, noting that the *Bossley* court did not address the question of whether an EKG machine or its graphs would constitute tangible personal property. *Baston,* 49 S.W.3d at 428. The court of appeals, therefore, concluded *Salcedo* was still controlling and reversed the trial court, holding that the plaintiffs' allegations did meet the waiver requirements under section 101.021(2). *Id.*

Since *Baston* and *Bossley* were decided, the supreme court issued *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540 (Tex.2003). In *Whitley,* the supreme court again defined what constitutes a "use" of tangible property under section 101.021.[3] *Id.* at 542. The plaintiff in *Whitley* was

---

3. Although *Whitley* involved the use of a motor-driven vehicle or motor-driven equipment under section 101.021(1)(A) of the TTCA, the supreme court noted that their application of "use" equally applied to the use of tangible property under section 101.021(2). *See Whitley,* 104 S.W.3d at 542–43.

assaulted and threatened with physical violence by a woman on a city bus. *Id.* at 541. Observing the potentially violent situation, the bus driver ordered the plaintiff to exit the bus, saying that he would come back for the plaintiff in a few minutes. *Id.* The woman who had threatened to kill the plaintiff exited the bus herself shortly thereafter. *Id.* She went directly home and recruited her son and his friends to assault the plaintiff. *Id.* Finding the plaintiff where the bus had left him, the woman and her recruits severely beat the plaintiff. *Id.* The plaintiff sued the city for his injuries, alleging that the state had waived immunity under the TTCA. *Id.* Specifically, the plaintiff alleged that his injuries arose from the use of the bus because the driver wrongfully ejected him in a remote and dangerous area of the city, allowed the woman, after she had assaulted and threatened the plaintiff in the driver's presence, to deboard the bus, and then failed to pick the plaintiff up as promised. *Id.* at 542.

The supreme court held that the plaintiffs' allegations failed to show that the state had consented to suit under the TTCA. *Id.* at 542–43. The supreme court emphasized that it has consistently required a nexus between the use of tangible property and the plaintiff's injuries. *See id.* The use of tangible property "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.* Applying the law to the facts, the court noted that the plaintiff's injuries were not caused by the use of the bus; they were caused by the woman and her recruits. *Id.* While the bus driver's failure to supervise the woman may have contributed to the plaintiff's injuries, the use of the bus did not. *Id.*

Similarly, here, Richard Anderson's death was caused by his cardiac condition and the EMTs' alleged negligence. It was not, however, caused by use of the EKG machine, itself. In light of *Whitley*, we no longer believe that *Salcedo* is controlling. We, therefore, hold that sovereign immunity bars the plaintiffs' suit, thereby depriving the trial court of subject matter jurisdiction. In so holding, we need not reach the Andersons' other issues.

## CONCLUSION

Because the City is protected by sovereign immunity from the Andersons' claims, we affirm the judgment of the trial court.

Concurring Opinion by SANDEE BRYAN MARION, Justice.

SANDEE BRYAN MARION, Justice, concurring.

I withdraw my opinion of June 25, 2003 and substitute this opinion in its place. Because the majority holds that the Texas Supreme Court's decision in *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30 (Tex.1983) is no longer controlling case law, I disagree and write separately. We are bound to follow *Salcedo* unless the Texas Supreme Court overrules it. Although having had ample opportunity to do so, the Supreme Court has not overruled its holding in *Salcedo*. *See University of Texas Med. Branch at Galveston v. York*, 871 S.W.2d 175, 178 (Tex.1994); *Dallas County Mental Health v. Bossley*, 968 S.W.2d 339, 342 (Tex.1998); *see also Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 595 (Tex.2001) (Enoch, J., dissenting). With the exception that the alleged actions in *Salcedo* occurred in a hospital setting rather than in a setting involving EMTs, the facts in *Salcedo* are virtually the same facts as in this case. Therefore, I would apply *Salcedo*'s holding here and hold that the EMTs' use of the EKG machine was the use of tangible personal property and, therefore, immunity is waived. *See Salcedo*, 659 S.W.2d at

33. However, since the *Salcedo* decision, the Legislature enacted several exceptions to the waiver of immunity, one of which applies to EMTs. Specifically, the City argued at the hearing on its motion to dismiss that Texas Civil Practice and Remedies Code section 101.062 applied as an exception to any waiver of immunity under section 101.021. Because I believe the City retains immunity under section 101.062, I concur in the judgment.

Section 101.062 provides that "[t]his chapter applies to a claim against a public agency that arises from an action of an employee of the public agency ... and that involves providing 9–1–1 service or responding to a 9–1–1 emergency call *only if the action violates a statute or ordinance applicable to the action.*" TEX. CIV. PRAC. & REM.CODE ANN. § 101.062(b) (Vernon 1997) (emphasis added). Thus, the City's immunity is not waived when providing 9–1–1 services unless the EMTs violate an applicable statute or ordinance. *Fernandez v. City of El Paso,* 876 S.W.2d 370, 376 (Tex. App.—El Paso 1993, writ denied). Here, there is no dispute that the EMTs were responding to an emergency call. Accordingly, the question is whether the Andersons sufficiently pleaded that the EMTs violated a statute or ordinance while responding to the Andersons' emergency. The Andersons contend the EMTs violated Texas Occupations Code sections 157.001 and 157.003, the City's Standard Operating Procedure for EMS Units, San Antonio Ordinance 43411, and City of San Antonio Resolutions 73–57–69 and 73–30–33. However, the Andersons have not produced or pled any evidence that an applicable statute or ordinance was violated by the City. Therefore, I would hold that their claims are barred by section 101.062 and affirm the trial court's judgment on that basis. *See The County of Zapata v. Lopez,* 61 S.W.3d 581, 584 (Tex. App.—San Antonio 2001, no pet.); *Guillen*

*v. City of San Antonio,* 13 S.W.3d 428, 433–34 (Tex.App.—San Antonio 2000, pet. denied); *Fernandez,* 876 S.W.2d at 376.