NO. 07-10-0034-CV

 

                                                   IN
THE COURT OF APPEALS

 

                                       FOR
THE SEVENTH DISTRICT OF TEXAS

 

                                                                 AT
AMARILLO

 

                                                                     PANEL
C

 

                                                                MARCH
9, 2010

                                            ______________________________

 

                                                          ELMER
WHITTAKER,

 

Appellant

 

                                                                            V.

 

                                                       REBECCA
WHITTAKER,

 

Appellee

______________________________

 

               FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

 

                       NO.
2009-549,132; HON. STEPHEN JOHNSON, PRESIDING

                                            ______________________________

 

                                                      MEMORANDUM
OPINION

                                            ______________________________

 

Before QUINN, C.J., and HANCOCK and
PIRTLE, JJ.








Elmer Whittaker perfected this appeal
on January 12, 2010.  The appellate
record was due on or about February 11, 2010. 
Both the district clerk and court reporter have filed motions to extend
the time to file their records because appellant apparently failed to pay or
make arrangements to pay for them, as required by Texas Rules of Appellate
Procedure 35.3(a)(1)(2) and 35.3(b)(3). 
By letter dated February 22, 2010, we directed appellant to certify to
this court, by March 4, 2010, that he had complied with rule of procedure
35.3(a)(1)(2). 
So too was he informed that failure to meet that deadline would result
in the dismissal of his appeal.  To date,
this court has not received either the clerk=s record, the reporter=s record, or notification that the
records have been paid for or that arrangements have been made for
payment.  Nor has this court received any
request to postpone the dismissal date. 
Consequently, we dismiss the appeal for want of prosecution.  

 

Per Curiam






 that the Legislature’s preservation of the
“condition and use” language considered in Lowe and Salcedo indicated an adoption of the
construction given in those cases. Applying Lowe, the Court held that the plaintiff stated
a cause of action which invoked the waiver of immunity based on the defendant’s failure
to provide a life preserver. Id. In reaching its decision, the Court recognized the
“troublesome waiver provision” and called upon the Legislature to clarify the extent to which
it intended to waive sovereign immunity. Id. at 170.
          Five years later, the Court decided University of Texas Medical Branch at Galveston
v. York, 871 S.W.2d 175 (Tex. 1994). In York, the patient, who was improving from severe
injuries he sustained in a car accident that left him partially paralyzed, was admitted to
UTMB for an inpatient program. Shortly after his admission, the patient broke his hip which
went undiagnosed for approximately eight days. He suffered severe pain, withdrawal,
depression, and regression in his rehabilitation.
          York sued UTMB and alleged misuse of tangible personal property by “failing to note
in [his] medical records” the events of the day he broke his hip and in “failing to
memorialize in writing numerous other observations concerning [his] condition . . . .” He
further alleged misuse of his medical records by “failing to follow a recommendation noted
in the records for an x-ray of [his] hip.” A jury returned a verdict in York’s favor, which was
affirmed by the court of appeals.
          Recognizing that the codified version of the Act eliminated the mandate for liberal
construction and instead called for construction subject to the general principles of
statutory construction in § 311.023 of the Code Construction Act, the Court held that mere
information, which may or may not be recorded in a patient’s medical records, does not
constitute use, misuse, or non-use of tangible personal property under § 101.021(2) of the
Act. York, 871 S.W.2d at 179. York’s judgment was reversed and judgment was rendered
in favor of UTMB. While paper itself can be touched, handled, and seen, the Court
reasoned that medical information recorded on paper is not tangible personal property. 
Id at 176. Information is intangible. Id. at 179. York had not alleged any misuse of any
hospital device or equipment. Id. at 178.
          In 1998, the Supreme Court limited Salcedo to its facts.


 See Dallas County Mental
Health and Mental Retardation v. Bossley, 968 S.W.2d 339, 342 (Tex. 1998). Bossley
involved a patient who escaped from a mental health facility, where patients were free to
come and go, through unlocked doors and committed suicide by throwing himself in front
of a truck. Id. at 340-41. The patient’s parents sued for wrongful death “caused by a
condition or use of tangible personal property,” i.e., the unlocked doors to the facility. 
          The trial court granted summary judgment in favor of MHMR based on sovereign
immunity, and the plaintiffs appealed. The appellate court applied Salcedo reasoning that
the involvement of “some condition or use of tangible property is enough” for waiver of
immunity and reversed the trial court. The Supreme Court reversed the appellate court
and rendered judgment that plaintiffs take nothing. In explaining its earlier holding in
Salcedo, the Court declared that while some involvement of property was necessary, mere
involvement, without causation, was insufficient. Id. at 342. The Court went on to note that
exactly how much more involvement was required was difficult for courts to define. “If only
involvement were required, the waiver of immunity would be virtually unlimited . . . .” Id.
at 343. Requiring only that a condition or use of property be involved would conflict the
Act’s basic purpose of waiving immunity only to a limited degree. Id. (quoting Lowe, 540
S.W.2d at 302-03) (Greenhill, C.J., concurring). Property does not cause injury if it does
no more than furnish the condition that makes the injury possible. Id. The Court found that
the patient’s death was too attenuated from a use or condition of the doors as to constitute
a waiver of sovereign immunity. Id.
          The Supreme Court requires a nexus between the use of tangible property and the
plaintiff’s injuries. Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542-43 (Tex.
2003) (plaintiff’s injuries did not arise from use of the bus, but from the bus driver’s failure
to supervise the public, which is insufficient to waive immunity under the Act). 
          The last Supreme Court decision we will examine is Texas Department of Criminal
Justice v. Miller, 51 S.W.3d 583 (Tex. 2001). In finding that the plaintiff’s claim did not fall
within § 101.021(2), the Court narrowed application of the Act’s waiver provision. Id. at
588. Miller, an inmate, was treated by TDCJ’s staff for nausea and severe headaches. 
He was given pain medication and other medications for fifteen days, after which he was
hospitalized and diagnosed with cryptococcal meningitis, which caused his death. Id. at
585. His widow filed suit alleging that Miller’s death was caused by misuse of tangible
property by (1) improperly administering pain medications and fluids which masked the
symptoms of meningitis, (2) improperly reading and interpreting fever-detecting equipment,
and (3) improperly using clinic facilities and equipment in diagnosing and treating Miller. 
She further alleged that TDCJ staff were negligent in “failing to practice medicine in an
acceptable manner . . . ,” failing to evaluate Miller in a timely manner, failing to make a
proper diagnosis, failing to order appropriate laboratory tests, and failing to treat Miller’s
true condition. Id. TDCJ filed a plea to the jurisdiction asserting that Mrs. Miller failed to
bring her claim within the waiver provision of the Act and alternatively, filed a motion for
summary judgment. The trial court denied TDCJ relief and the court of appeals affirmed. 
Id. at 586. 
          TDCJ contended in the Supreme Court that Mrs. Miller, in essence, alleged only the
non-use of tangible personal property and an error in medical judgment, which do not fall
within the statutory waiver. Id. at 588. Mrs. Miller responded that not only did she allege
failure to use tangible property, but also simultaneous misuse of pain medication and other
medications and diagnostic equipment. The Court described her contention as “an
attractive attempt to distinguish” non-use cases, but was not persuaded. Id.
          Defining “use” as “to put or bring into action or service, to employ for or apply to a
given purpose,” the Court noted that while TDCJ did “bring into . . . service” and “employ”
various drugs and medical equipment to treat Miller, the mere involvement of some
property was not enough. See id. at 588. See also Kerrville State Hosp. v. Clark, 923
S.W.2d 582, 584 (Tex. 1996). “Using that property must have actually caused the injury.” 
Miller, 51 S.W.3d at 588. Recognizing the problematic distinction it drew, the Court
nevertheless concluded that because the property used to treat Miller did not actually
cause his death, there was no waiver of sovereign immunity. Id. at 588-89.
II. Significant Intermediate Appellate Decisions
          Recently, the Texarkana Court of Appeals, in affirming a trial court’s order denying
two nurses’ motion to dismiss, analyzed § 101.021(2) and discussed contrasting decisions
from other intermediate appellate courts. See Lanphier, R.N., v. Avis, 244 S.W.3d 596
(Tex.App.–Texarkana 2008, pet. filed). In that case, Avis filed a health care liability suit
against two nurses alleging negligence in failing to properly carry out their nursing
responsibilities. Notwithstanding that a fetal monitor strip showed Avis’s fetus to be in
distress after she had vomited and had a high fever, her labor was allowed to proceed for
eight hours. After the nurses were unable to locate a fetal heart tone, a cesarean section
surgery was performed and Avis’s baby was delivered stillborn.
          In reviewing this Court’s opinion in Clark v. Sell, 228 S.W.3d 873 (Tex.App.–Amarillo
2007, pet. filed), in which we held that suit could not be maintained under any available
waiver provision of the Act, the Texarkana Court of Appeals noticed the importance of the
absence of a nexus between the use of tangible personal property and the injury
sustained. Lanphier, 244 S.W.3d at 602. 
          Kelso v. Gonzales Heathcare Systems, 136 S.W.3d 377 (Tex.App.–Corpus Christi
2004, no pet.), involved delayed treatment following results of an EKG which indicated the
patient was having a heart attack. The plaintiff alleged that the delay in treatment caused
permanent injuries and the injuries were caused by misuse of the EKG machine. Id. at
380. The court concluded that the patient’s allegations did not bring the claims within the
waiver provisions of the Act because the plaintiff had not made an affirmative allegation
that the EKG machine was incorrectly used or that its results were erroneous. Id. 382. 
The court reasoned that misuse of information produced by the EKG machine caused the
injuries rather than misuse of the device itself. Id. 
          By contrast, in University of Texas Medical Branch Hosp. at Galveston v. Hardy, 2
S.W.3d 607, 609-10 (Tex.App.–Houston [14th Dist.] 1999, pet. denied), a cardiac monitor
alarm indicated heart stoppage, but resuscitation efforts were not commenced until at least
five minutes after the first alarm. Id. 608-09. The patient suffered severe brain damage
and was eventually removed from life support systems. The plaintiff sued for wrongful
death alleging the hospital staff failed to properly oversee the monitor. The court relied
heavily on Salcedo and concluded that the use of the cardiac monitor, like the EKG,
directly affected and impacted the person whose heart condition was being monitored. Id.
at 610. 
          In recognizing conflicting results, the Court in Lanphier was persuaded by the
reasoning in Kelso and Clark, finding that the substance of Avis’s allegations did not
concern use of tangible property but were more akin to misuse of information provided by
the monitor, which is not considered tangible property under the Act. The court quoted
from Turner v. Zellers, 232 S.W.3d 414 (Tex.App.–Dallas 2007, no pet.):
the mere use of tangible personal property by Dr. Zellers in connection with
his diagnosis and treatment of [patient] does not mean the State has waived
sovereign immunity for any health care liability claim arising from that
diagnosis and treatment. To hold otherwise would render a governmental
unit subject to suit any time a physician employed by it picked up a tongue
depressor and examined a patient.
          Four years after Hardy, the San Antonio Court of Appeals found that Salcedo was
no longer controlling in a case involving the use of an electrocardiogram. See Anderson
v. City of San Antonio, 120 S.W.3d 5 (Tex.App.–San Antonio 2003, pet. denied). In that
case, emergency medical technicians were dispatched to Anderson’s home because he
was suffering from severe chest pains. Id. at 6. Two electrocardiogram tests were
performed, and the EMTs determined that Anderson did not need to be taken to the
hospital. Id. Later that day, Anderson again suffered chest pains and EMTs were
dispatched to his home. This time, he was transported to the hospital where he died that
night. Id.
          Relying on Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540 (Tex. 2003), the
San Antonio Court of Appeals concluded that Anderson’s death was caused by his cardiac
condition and the EMTs’ alleged negligence, and not by use of the electrocardiogram
machine. Anderson, 120 S.W.3d at 9. 
III.      Statutory Construction
          We acknowledge that in 1985, a legislative comment following the Act stated that
the “Act [was] intended as a recodification only, and no substantive change in the law [was]
intended . . . .”


 However, comments following code provisions, while instructive, are not
law. Fetter v. Wells Fargo Bank Texas, N.A., 110 S.W.3d 683, 687 (Tex.App.–Houston
[14th Dist.] 2003, no pet.); Lockhart Sav. & Loan Ass’n v. RepublicBank Austin, 720
S.W.2d 193, 195 (Tex.App.–Austin 1986, writ ref’d n.r.e.). Thus, a legislative comment
cannot be construed as altering clear and unambiguous language of a statute.  
          Courts take statutes as they find them. RepublicBank Dallas, N.A. v. Interkal, Inc.,
691 S.W.2d 605, 607 (Tex. 1985) (quoting Simmons v. Arnim, 110 Tex. 309, 220 S.W. 66,
70 (1920)). When construing a statute, every word, phrase, and expression is read as if
it were deliberately chosen, and we presume the words excluded from a statute were done
so purposefully. See Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981).
See also Mid-Century Ins. Co. v. Texas Workers’ Compensation Com’n, 187 S.W.3d 754,
758 (Tex.App.–Austin 2006, no pet.); Gables Realty Ltd. P’ship v. Travis Cent. Appraisal
Dist., 81 S.W.3d 869, 873 (Tex.App.–Austin 2002, pet. denied).
          The word “some,” which was excluded from § 101.021(2) by the Legislature in 1985,
means: being an unknown, undetermined, or unspecified unit or thing. Webster’s New
Collegiate Dictionary 1099 (1981). When Salcedo was decided, “use” and “condition” were
both modified by the word “some.” Under the holding in Salcedo, an allegation of “some
use” of tangible property was sufficient if the property was alleged to be a contributing
factor. Years later, the Court in Miller concluded that mere involvement of “some” property
was not enough to fall within the waiver provision. 51 S.W.3d at 588. Instead, using the
property must have actually caused the injury. Id. Unlike the “failing to” allegations in Lowe
v. Texas Tech University, which was decided under the Act when the word “some” modified
use and condition, Mrs. Miller’s allegations, which were couched in terms of “failing to,” were
found insufficient to demonstrate a waiver of sovereign immunity.


 
 

Analysis
I. Application of § 101.021(2) to the Wards’ Claim
          Considering the similarity of the arguments raised by TTUHSC and UMC, we will
address their issues simultaneously. Under § 101.021(2) of the Act, a governmental unit
waives sovereign immunity for death (1) caused by (2) a condition or use of tangible
personal property. We first turn to an examination of the Wards’ pleadings and relevant
jurisdictional evidence to determine whether their claims fall within the limited waiver of
sovereign immunity. At the time of the hearing on the pleas to the jurisdiction, the Wards
had filed their Fourth Amended Petition. They alleged that UMC, through its nurse, was
negligent as follows:
a. [m]isuse of the external fetal monitor attached to Carita Ward by failing to
recognize and respond to a non-reassuring heart rate pattern of her fetus;
b. [n]on-use of the external fetal monitor attached to Carita Ward by failing to
recognize and respond to a non-reassuring heart rate pattern for her fetus.
They further alleged that the “misuse and non-use of the fetal heart rate monitor was a
foreseeable and proximate cause of injuries and damages . . . .”
          As for TTUHSC, the Wards alleged negligence by its resident physician, Dr. Carol
Tracy Suit, as follows:
a. [n]on-use of the external fetal heart rate monitor to access the status of the
unborn child before ordering Carita Ward discharged;
b. [m]isuse of the external fetal heart rate monitor by failing to recognize and
respond to a non-assuring heart rate pattern of Carita Ward’s fetus;
c. [n]on-use of the external heart rate monitor by failing to recognize non-assuring fetal heart rate patterns prior to discharging Carita Ward. 
They further alleged that Dr. Suit’s negligence was “a foreseeable and proximate cause of
injuries and damages . . . .”
          In support of their pleading, the Wards attached expert reports


 and deposition
excerpts from a nurse employed by UMC. The limited excerpts show that the nurse
responsible for Carita was a recent graduate with only four and one-half months experience. 
She testified that it was her job to notify the physician if she felt there were non-reassuring
signs on the tracings from the external monitor.
          UMC filed its plea to the jurisdiction alleging that the Wards had not raised claims
that fell within the limited waiver of sovereign immunity under the Act. To support its plea,
UMC attached Carita’s sealed medical records. Those documents establish that there was
a “tight true knot” in the umbilical cord. TTUHSC filed its plea to the jurisdiction after being
added as a defendant by the Wards’ Third Amended Petition and also filed a supplemental
plea to the jurisdiction after the Wards filed their Fourth Amended Petition. It asserted that
the Wards had failed to allege adequate grounds for waiver of sovereign immunity. 
          During the hearing on the pleas to the jurisdiction, defense counsel for UMC argued
that the “non-use” paragraph of the Wards’ allegations against UMC be stricken. See
Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 584 (Tex. 1996) (non-use of tangible
personal property does not fall under the waiver provisions of the Act). See also Kassen
v. Hatley, 887 S.W.2d 4, 14 (Tex. 1994) (non-use of property does not trigger waiver of
sovereign immunity under the Act). In response, counsel for the Wards suggested that
“non-use” and “misuse” were a matter of semantics and offered to amend the Wards’
pleadings. The trial court replied, “[a]ll right.” Three days after the hearing, the Wards filed
their Fifth Amended Petition alleging only misuse of the external fetal monitor against UMC
and TTUHSC and eliminating any “non-use” paragraphs. A month after the Fifth Amended
Petition was filed, the trial court signed its order denying the pleas to the jurisdiction.
          At first glance, the Wards’ allegations that TTUHSC and UMC were negligent in
misuse of the external fetal heart monitor seem to fit under the Court’s analysis in Salcedo
that “some” use of tangible personal property was involved. However, the Wards also
alleged that TTUHSC and UMC were negligent in “failing to recognize and respond to a
non-assuring heart rate pattern of Carita Ward’s fetus.” 
          In conducting a de novo review, we conclude the following: Salcedo was decided
under the pre-codified version of the Act which called for liberal construction of the waiver
provisions. Since then, the mandate for liberal construction has been repealed.


 
Additionally, the Supreme Court has interpreted the limited waiver provisions of the Act
more narrowly. Intermediate appellate courts have struggled with the waiver provisions of
the Act resulting in conflicting decisions. However, given the Legislature’s post-Salcedo
changes to the Act in 1985, i.e., deletion of the word “some” before use and condition,
elimination of the mandate to liberally construe the waiver provisions, and given the
Supreme Court’s trend to limit Salcedo and narrowly apply § 101.021(2) to cases involving
a causation nexus between the use of tangible property and complained of injury or death,
we hold the Wards have not demonstrated that “use” of the fetal heart rate monitor caused
their injury. They did not allege that the monitor was incorrectly used or that its results were
erroneous. Rather, they couched their allegations as “failing to recognize and respond,”
which are allegations of misuse of information and negligence by medical staff. They have
also failed to establish a nexus between use of the monitor and the stillborn birth of their
child. Additionally, the evidence indicates that the cause of death was a true knot in the
umbilical cord. Resultantly, the Wards have failed to state a claim under § 101.021(2) of
the Act. The two issues presented by TTUHSC are sustained and the three issues raised
by UMC are likewise sustained. 

II. The Wards’ Opportunity to Amend Pleadings 
          When a plaintiff fails to plead facts that establish jurisdiction, but the petition does
not demonstrate incurable defects, the issue is one of pleading sufficiency and the plaintiff
should be afforded the opportunity to amend. See Miranda, 133 S.W.3d at 226-27. See
also County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). If the pleadings
affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be
granted without allowing the plaintiffs an opportunity to amend. Brown, 80 S.W.3d at 555. 
Despite having failed to affirmatively plead facts establishing jurisdiction, the Wards were
afforded an opportunity to amend their Fourth Amended Petition after the hearing on the
pleas to the jurisdiction. By their Fifth Amended Petition, they deleted the “non-use”
paragraphs and alleged only misuse of the external fetal heart monitor. Practically
speaking, the Wards have already had an opportunity to replead to no avail. A plaintiff
should not be permitted to relitigate jurisdiction once that issue has been finally determined. 
See Harris County v. Sykes, 136 S.W.3d 635, 639 (Tex. 2004). Thus, we are required to
render the judgment the trial court should have rendered. Tex. R. App. P. 43.3. 
                                                              Conclusion
          Consequently, the trial court’s order denying Texas Tech University Health Sciences
Center’s and University Medical Center’s respective pleas to the jurisdiction is reversed.
Rendering the judgment the trial court should have rendered, we grant Texas Tech
University Health Sciences Center’s and University Medical Center’s pleas to the jurisdiction
and dismiss Carita Elizabeth Ward and Dustin Ward’s claim for want of jurisdiction. 
 
                                                                           Patrick A. Pirtle

                                                                                 Justice

 
 
Quinn, C.J., not participating.