02-10-111-CV















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00111-CV

 

 


 
 
 Linell Redden, Individually and as
 Representative of the Estate of Robert Jones Redden, Deceased; Sabre Marie
 Redden; and Sean Michael Redden
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Denton County
 
 
  
 
 
 APPELLEE
 
 


 

 

------------

 

FROM THE
211th District Court OF Denton
COUNTY

------------

OPINION

----------

I. 
Introduction

          In one issue, Appellants Linell Redden, individually and as representative of the
estate of Robert Jones Redden, deceased; Sabre Marie
Redden; and Sean Michael Redden (collectively, “Appellants”) complain that the
trial court erred by granting Appellee Denton County’s plea to the
jurisdiction.  We affirm.

II.  Background

          Appellants sued Denton County under the Texas Tort Claims Act (TTCA)
after Redden died while incarcerated in the Denton County Jail, alleging misuse
of the county’s electrocardiogram (EKG) machine by misinterpreting the data
derived from it that led to his improper treatment and death, among other
allegations not at issue here.[1]  See Tex. Civ. Prac.
& Rem. Code Ann. §§ 101.001–.109 (Vernon 2005).

In support of their claim, Appellants alleged that Redden,
who was incarcerated from May 1, 2006, until his death on July 9, 2006,
informed jail personnel of his history of coronary artery disease.  On at least three occasions, Redden complained
of chest pains “and other signs and symptoms of cardiac ischemia for which EKG
testing was performed but for which no EKG assessment was made by
qualified medical personnel,” and facility employees “misused [the county’s]
EKG and the data derived from the EKG by failing to properly assess” Redden’s cardiac problems pursuant to the county’s
protocols.  On July 9, Redden’s symptoms worsened and he had a heart attack in the
jail infirmary.

Denton County filed a plea to the jurisdiction, adding
these additional facts:

·       
Redden reported to jail medical staff that he had
had a heart attack eleven years before but that he was not currently seeing any
doctor for his past heart attack, had not taken any prescription medicine for a
heart condition in the last eight years, and was just taking aspirin;

 

·       
Redden was evaluated and treated in the jail
infirmary on at least six occasions: 
June 10, June 18, June 19, June 30, July 5, and July 9, involving a variety
of matters, including discharge from his left ear, chest pain, left elbow pain,
throat pain, acid reflux, and “ultimately [a] heart attack”;

 

·       
EKG tests were performed on June 10, June 19, and
June 30 before Redden reported to the infirmary on July 9, complaining of
“sweating, arms tingling, chest hurting,” and received another EKG test.

 

·       
Redden suffered sudden cardiac arrest while in the
infirmary;

 

·       
The medical examiner determined that Redden had
experienced a sudden blood clot, and the medical cause of death was “Coronary
Artery Thrombosis Due to Atherosclerosis Cardiovascular Disease”;

 

·       
Medical Officer Day testified that if the EKG
machine is not operating properly, it will not run a “strip,” and the machine
will let the operator know that there is a problem.  A “strip” was printed each time the EKG
machine was used on Redden.

 

In its plea, Denton County argued that it was
protected by sovereign immunity, that “[t]he sole and very narrow issue . . .
is whether tangible property was misused and such misuse caused” Redden to have
a heart attack, and that, even though the EKG machine is tangible county
property, there was no actionable misuse because the machine was working
properly and the only machine-related complaint brought by Appellants pertained
to the misinterpretation of the printouts by infirmary personnel.[2]

          In
their response to Denton County’s plea to the jurisdiction, Appellants
specifically alleged that Denton County employees “found the [EKG] graphs
revealed normal activity instead of ischemic changes and, based on that misinterpretation, treated Redden with antacids for
heartburn rather than providing him with immediate cardiac care.”  They stated, “Simply put, if Denton County
staff had not misinterpreted the EKG readings as acid reflux, Redden would have
received the immediate medical treatment he needed for his heart and probably
lived.”  Appellants never alleged that
the EKG machine itself was not properly working.  After a hearing, the trial court granted Denton
County’s plea to the jurisdiction, and this appeal followed.

III.  Plea to the
Jurisdiction

The issue presented to this court can be distilled
to a single question:  Is Salcedo v. El Paso Hospital District, 659 S.W.2d 30, 32 (Tex. 1983), which held that an allegation of
misuse of tangible property by improper reading and interpretation of EKG
graphs stated a claim under the TTCA, still
good law regarding the “use” of an EKG machine, or has it been implicitly
overruled by Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540 (Tex. 2003)?

A.  Standard of Review

A
plea to the jurisdiction is a dilatory plea used to defeat a cause of action
without regard to whether the claims asserted have merit.  Tarrant
County v. McQuary, 310 S.W.3d 170, 172 (Tex.
App.—Fort Worth 2010, pet. denied) (citing Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000)).  The plea challenges the trial court’s subject
matter jurisdiction.  Id. 
Whether the trial court had subject matter jurisdiction is a question of
law that we review de novo.  Id. (citing Tex. Natural Res. Conservation Comm’n v.
IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002)).

The
plaintiff has the burden of alleging facts that affirmatively establish the
trial court’s subject matter jurisdiction. 
Id. at 173 (citing Tex. Ass’n of Bus.
v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)).  We construe the pleadings liberally in the
plaintiff’s favor, look to the pleader’s intent, and accept the pleadings’
factual allegations as true.  Id. (citing Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226
(Tex. 2004)).

B.  Texas Tort Claims Act

A
governmental entity is immune from suit except to the extent waived by the
TTCA.  See Tex. Civ. Prac. & Rem. Code Ann. §§
101.001(3)(B), 101.021.  Under the current version of the TTCA, a
governmental unit’s sovereign immunity is waived for “personal injury and death
so caused by a condition or use of tangible personal or real property if the
governmental unit would, were it a private person, be liable to the claimant
according to Texas law.”  Id. § 101.021(2).  That is, to state a claim under section
101.021(2), the plaintiff must allege that (1) property was used or misused by
a governmental employee and (2) the use proximately caused personal injury or
death.  Archibeque v. N. Tex. State Hosp.-Wichita
Falls Campus, 115 S.W.3d 154, 158 (Tex. App.—Fort Worth 2003, no pet.).
 The supreme court
has defined “use” as “to put or bring into action or
service; to employ for or apply to a given purpose.”  Whitley,
104 S.W.3d at 542 (citing Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg, 766 S.W.2d 208,
211 (Tex. 1989)). 
Neither party disputes that the phrase “tangible personal property”
includes EKG machines or that the EKG machine in question belonged to Denton
County.

C.  “Use” of an EKG
Machine

          There
is currently a split in authority with regard to “use” of an EKG machine.  Some courts of appeals have held, implicitly
or explicitly, that Salcedo
is still the applicable law.  See, e.g., Tex. Tech Univ. Health Sci. Ctr. v. Lucero, 234 S.W.3d 158 (Tex.
App.—El Paso 2007, pet. denied); Univ. of
Tex. Med. Branch Hosp. at Galveston v. Estate of Blackmon, 169 S.W.3d 712
(Tex. App.—Waco 2005, pet. granted) (op. on reh’g), vacated on jurisdictional grounds, 195
S.W.3d 98 (Tex. 2006).  Other courts have
followed Whitley’s reasoning and
treat Whitley as though it has overruled
Salcedo.  See,
e.g., Tex. Tech Univ. Health Sci.
Ctr. v. Ward, 280 S.W.3d 345 (Tex. App.—Amarillo 2008, pet. denied); Lanphier v. Avis, 244 S.W.3d 596 (Tex.
App.—Texarkana 2008, pet. dism’d as moot); Kelso v. Gonzales Health Sys., 136
S.W.3d 377 (Tex. App.—Corpus Christi 2004, no pet.); Anderson v. City of San Antonio, 120 S.W.3d 5 (Tex. App.—San
Antonio 2003, pet. denied).  We must
decide which path to follow.

1.  Salcedo v. El Paso Hospital
District

Everedo Salcedo died from a heart attack after he was given an EKG
test in the emergency room—the results of which allegedly showed a classic
pattern for a heart attack—and then was released without treatment.  Salcedo, 659 S.W.2d at 31.  Salcedo’s widow
alleged that the hospital district was liable for his death under the TTCA based
on misuse of the EKG equipment “by improperly reading and interpreting the
electrocardiogram graphs and charts produced by the equipment.”  Id. at 32.  The trial
court dismissed her case for failure to state a claim under the TTCA, and the
court of appeals affirmed.  Id. at 31.

          The supreme court
reversed, first holding that “an allegation of defective or inadequate tangible
property is not necessary to state a cause of action under the Act if ‘some
use’ of the property, rather than ‘some condition’ of the property, is alleged
to be a contributing factor to the injury.” 
Id. at 32.
 It then determined that the widow’s
allegation that the hospital district was liable under the TTCA for misuse in
improperly reading and interpreting the EKG graphs stated a claim.  Id.
at 31, 33 (stating, “[r]eading and interpreting are
purposes for which an electrocardiogram graph is used or employed in diagnosing
myocardial infarction”).

To reach this holding, the supreme court
construed language in an earlier version of the TTCA—specifically, the word
“some” before “condition” and “use,”[3] and the
provision requiring liberal construction. 
Id. at 32,
33.  It relied on Chief Justice Greenhill’s
concurring opinion in Lowe v. Texas Tech
University, in which he noted that the statutory language—some “condition or
use” of property—“implies that such property was furnished, was in bad or
defective condition or was wrongly used”
and in which he encouraged the legislature to express its intent to waive
immunity more clearly.  Id. at 32 (citing Lowe v. Texas Tech Univ., 540 S.W.2d 297, 301 (Tex. 1976)
(Greenhill, C.J., concurring)).  And the
court noted that a senate report to the 62nd legislature recognized the
difficulty that the language would cause courts[4] and
expressed frustration that the language continued to cause difficulty.  Id. (“Seven years have passed since our opinion in Lowe, yet the legislature has not
changed the troublesome waiver provision.”).

The
court then held that because reading and interpreting information are the purposes for which the EKG graphs are used in diagnosing
a heart attack, this constituted use of tangible property and stated a claim
under the TTCA.  Id.; see also Baston v. City of Port Isabel, 49 S.W.3d 425, 429 (Tex.
App.—Corpus Christi 2001, pet. denied) (holding that negligence in the use or
misuse of an EKG machine that causes inappropriate treatment resulting in
injury or death constitutes a permissible cause of action under the TTCA); Univ. of Tex. Med. Branch Hosp. at Galveston v. Hardy, 2 S.W.3d 607, 610
(Tex. App.—Houston [14th Dist.] 1999, pet. denied) (stating that the failure to
monitor a cardiac monitor is indistinguishable from Salcedo as far as the use or
misuse of tangible personal property is concerned); Montoya v. John Peter Smith Hosp., 760 S.W.2d 361, 364 (Tex.
App.—Fort Worth 1988, writ denied) (indicating a written record like the print
out from an EKG machine may be tangible personal property “when it records a
tangible situation, as in Salcedo”).  However,
the court has since limited Salcedo to its facts. 
Dallas Cnty.
Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 342
(Tex. 1998), cert. denied, 525 U.S.
1017 (1998).

2.  Revision and Recodification
of the TTCA

When Salcedo was decided on October 26, 1983, the TTCA provided
for a waiver of sovereign immunity for death or personal injuries caused from “some”
condition or “some” use of tangible property.  See
Act of May 28, 1983, 68th Leg., R.S., ch. 530, § 1,
1983 Tex. Gen. Laws 3084, 3085 (repealed, recodified,
and amended 1985).  At that time, the TTCA
also provided, “[t]he provisions of this Act shall be liberally construed to
achieve the purposes hereof.”  See Act of May 14, 1969, 61st Leg.,
R.S., ch. 292, § 13, 1969 Tex. Gen. Laws 874, 877, repealed by Act of May 17, 1985, 69th
Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242,
3322.  When the legislature recodified the TTCA, two years after Salcedo, it deleted the word “some”
and repealed the provision mandating liberal construction, even though it also
included a legislative comment that the “Act [was] intended as a recodification only,” with no substantive change in the law
intended.  See Act of May 17, 1985, 69th Leg., R.S.,
ch. 959, §§ 1, 9–10, 1985 Tex. Gen. Laws 3242, 3303,
3322.

Prior to Whitley,
but after this amendment, the supreme court began to
narrow Salcedo.  See Univ. of Tex. Med. Branch at Galveston v. York, 871 S.W.2d 175,
178–79 (Tex. 1994).  In York, a patient sued for negligence
under the TTCA after he broke his hip during in-patient physical therapy and
the hospital failed to diagnose the broken hip for nine days.  Id. at 176.  He
alleged that the hospital misused tangible personal property by failing to note
in his medical records about the broken hip or to follow a recommendation noted
in the record for an x-ray of the hip to determine whether it was broken.  Id.  The court stated that information is
intangible and “the fact that information is recorded in writing does not
render the information tangible property.” 
Id. at 179.  It held that Salcedo did not permit claims
against the State for misuse of information and that “[w]hile
paper itself can be touched, handled, and seen, medical information recorded on
paper is not tangible personal property.” 
Id. at 176,
179.  Therefore, York failed to
state a claim under the TTCA because there is no waiver of immunity for
negligence involving the use, misuse, or nonuse of medical information.  Id.
at 176

3. Dallas Area Rapid Transit v. Whitley 

Whitley, a cerebral palsy sufferer, sued the
Dallas Area Rapid Transit Authority (DART) under the TTCA after a fellow bus
passenger, Burkley, severely beat him and put him in
the hospital for ten days.  104 S.W.3d at 542. 
Whitley had been verbally harassed and threatened by Burkley,
and the bus driver resolved the dispute by depositing Whitley in a bad
neighborhood and telling him he would return for him in a few minutes.  Id. at 541–42.  The bus did not return, and Burkley disembarked at the next stop, recruited her son and
his friends to join her vendetta, and attacked Whitley.  Id. at 542.  Whitley
sued DART for negligence, arguing that “his injuries ar[o]se
from a use of the bus because the bus driver wrongfully ejected him in a remote
and dangerous area of Dallas, allowed Burkley to deboard after she assaulted and threatened him in the
driver’s presence, and then failed to pick him up as promised.”  Id.

Noting
first that it had consistently required “a nexus between the operation or use
of a motor-driven vehicle or equipment and a plaintiff’s injuries” that was more
than mere involvement of the property, the court ultimately held that Whitley’s
injuries did not arise from the use of the bus but rather “from the bus driver’s
failure to supervise the public, which is insufficient to waive immunity under
the Tort Claims Act.”  Id. at 542–43.  The court reasoned that, in this case, the
use of the motor vehicle did no more than furnish the condition that made the
injury possible because “Burkley and her accomplices caused Whitley’s injuries[;] . . . the
driver’s failure to supervise Burkley may have
contributed, but the operation or use of the bus did not.”  Id. at 543.  Hence, there
exists an argument that an EKG machine’s readings furnish only a condition—information—that
makes an injury possible and that, if the EKG machine is operated properly, it
is not “misused” if its readings are improperly interpreted.  See id.

4.   
Recent Case Law

As previously stated, some courts have taken Whitley’s reasoning and reached a result that would not have been
reached under Salcedo.  That is, considering the legislature’s 1985
amendment of the TTCA, the supreme court’s
post-amendment narrowing of the scope of the TTCA’s immunity waiver, and Whitley, these courts follow the rule
that a medical machine’s use—not its generated information—must cause injury
because generated information does not constitute “use” under the TTCA.

In Anderson, for
example, the San Antonio Court of Appeals held that the use of an EKG machine
did not cause Richard Anderson’s death by heart attack after he received two
EKGs—the results of which were disputed—and was not transported to the
emergency room despite his pleas that he was having a heart attack.  120 S.W.3d at 6–7, 9.  Rather, Anderson’s death was caused by his
cardiac condition and the alleged negligence of the emergency medical
technicians.  Id. at 9.  A majority of the court stated that “in light
of Whitley, we no longer believe that
Salcedo is
controlling.”  Id.[5]

Similarly, in Kelso, the
Corpus Christi Court of Appeals distinguished proper use of an EKG machine from
the subsequent misuse or nonuse of information provided by it to uphold the
trial court’s grant of a hospital’s plea to the jurisdiction, although it
reversed and remanded to allow the Kelsos the
opportunity to amend their pleading.  136 S.W.3d at 380, 382. 
Daisy Kelso had an EKG performed but did not immediately receive medical
treatment for her acute myocardial infarction until two hours after the EKG
results showed that she was having a heart attack.  Id. at 380.  The court
held that “the use or misuse of an EKG [machine] is distinguishable from the
use or misuse of information.”  Id. at 382.  That is, if the machine is correctly used,
“any subsequent misuse or nonuse of the information it reveals about a
patient’s medical condition does not waive immunity under the [TTCA], as it was
the use of the information, not the tangible property, which was the proximate
cause of injury.”  Id.

          Further, in Ward, the Amarillo Court of Appeals held
that a stillborn child’s parents, who sued a hospital alleging that misuse of
information from the fetal heart rate monitor caused
the child’s death, failed to allege that the monitor itself was incorrectly
used or that its results were erroneous, and therefore failed to state a claim
under the TTCA.  280 S.W.3d at 356
(“Rather, they couched their allegations as ‘failing to recognize and respond,’
which are allegations of misuse of information and negligence by medical
staff.”).  The court reached this result
by reviewing the TTCA, its revisions following Salcedo, and the numerous cases after
Salcedo,
including Whitley.  Id. at 349–55.  It
observed that the supreme court’s trend has been to
limit Salcedo
and to apply section 101.021(2) narrowly regarding use of tangible personal
property.  Id. at 351–53; see also Lanphier, 244 S.W.3d at 606–07 (holding that
stillborn’s mother failed to state a claim under the TTCA when she alleged that
the nurses should have taken alternate actions based on the information
contained in the fetal monitor strips and not that they misused the fetal
monitor itself because information is not “tangible property”).

On the other hand, some courts continue to follow Salcedo.  The tenor of these cases is that the supreme court has had opportunities to overrule Salcedo and has
not done so; thus, the misuse of information from medical machines continues to
constitute “use” under the TTCA.

In Blackmon, for
example, the Waco Court of Appeals held that allegations that a prison nurse
failed to properly use diagnostic medical tools stated a claim under the
TTCA.  169 S.W.3d at
716, 722–23.  An inmate died
of pneumonia following an examination by a prison nurse using a pulse oxymeter, stethoscope, and thermometer, and the results of
the examination did not, but allegedly should have, resulted in a referral to a
physician for treatment.  Id. at 714–15.  The court stated, “[W]e do not believe that
the supreme court—without telling us so, despite many opportunities—has
. . . fashioned a new rule of law in TTCA cases that the property
itself must be the actual instrument that physically caused the harm.”  Id. at 721.  It
reasoned that although the actual physical instruments themselves did not kill
Blackmon, the fact that her immediate and direct cause of death was untreated
pneumonia did not foreclose the alleged negligent use or misuse of the
stethoscope and pulse oxymeter from being a proximate
cause of her death under the TTCA because they were tangible personal property
whose purposes were to assist in the assessment of Blackmon’s lung functioning,
and if they had been properly used, she would have received life-saving
treatment.  Id. at 721–22.

Likewise, in Lucero, the
El Paso Court of Appeals applied Salcedo to hold that misuse of an abdominal CT scan and the
related failure to diagnose a bile leak that resulted in the patient’s death
stated a claim under the TTCA.  234 S.W.3d at 163–64, 172.  The court disagreed
with the San Antonio court’s refusal to apply Salcedo in Anderson, distinguished Whitley
as not involving misuse of diagnostic medical equipment, and held that “[l]ike the [EKG] graph in Salcedo, an abdominal CT scan and
its films are used in diagnosing various conditions of the abdomen.  The Lucero
plaintiffs alleged and offered evidence to prove that there was a misuse of the
abdominal CT scan[;]” therefore, sovereign immunity
was waived.  Id. at 171–72.

5.    Analysis

          We are persuaded by
the reasoning of our sister courts in holding that the “use” of tangible
property must involve the use of a medical machine, not the “use” of
information from the medical machine.  See Ward, 280 S.W.3d at 356; Kelso, 136 S.W.3d at 380, 382; Anderson, 120 S.W.3d at 6–7, 9.  We base our decision on the following factors.  First, a plain reading of the TTCA requires
that the use of tangible property cause personal injury or death.  Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2).  It is undisputed here that the EKG machine
itself did not injure Redden.  Nor was it
alleged that the machine produced inaccurate information that led to his death.  Rather, Appellants alleged only that the
accurate information produced by the machine was misused by the medical
staff.  Therefore, it is the medical
staff that allegedly caused Redden’s death, not the
machine or the machine’s use.

Second, as noted above, information is not tangible property.  York,
871 S.W.2d at 178–79; see also Kassen v. Hatley, 887 S.W.2d 4, 14 (Tex. 1994) (stating
that information in an emergency room procedures manual is not tangible
property).  In Gainesville Memorial Hospital v. Tomlinson, we stated,

Tomlinson’s
allegation is that GMH used, misused, or failed to use laboratory results. 
Laboratory results are not tangible property merely because they are
recorded on paper which is tangible. 
This constitutes an allegation of use or misuse of information.  Information itself is an abstract concept,
lacking corporeal, physical, or palpable qualities, and therefore,
intangible.  Because this claim does not
demonstrate the use or misuse of tangible property, it must fail.

 

48 S.W.3d 511, 514 (Tex. App.—Fort Worth 2001, pet. denied)
(citing York, 871 S.W.2d at 178–79); see also Arnold v. Univ. of Tex. Sw. Med. Ctr. at Dallas, 279 S.W.3d 464,
469 (Tex. App.—Dallas 2009, no pet.) (“[I]nformation
that may or may not be documented in a patient’s medical records does not
constitute tangible personal property for waiver under the TTCA”); Gipson v. City of Dallas, 247 S.W.3d
465, 471–72 (Tex. App.—Dallas 2008, pet. denied) (holding that because information
is not tangible personal property but rather “an abstract concept that lacks
corporeal, physical, or palpable qualities,” immunity was not waived under TTCA
based on allegation that delay resulting from ambulance driver’s failure to
timely respond to dispatcher’s announcement caused patient’s death).

          Third, while we
acknowledge that Whitley involved a
bus and not a medical machine, and that the supreme court
did not explicitly overrule Salcedo in that
case or in any other to-date, the supreme court clearly distinguished the use
of the bus, which involved the use of tangible property, from the improper
actions of the bus driver, which did not. 
See Whitley, 104 S.W.3d at 543. 
Therefore, while Redden’s treatment involved
the use of the EKG machine, it was only the alleged misuse of the machine’s information,
which is not tangible property, that caused his
death.  We therefore hold that the claim as
alleged does not fall under the TTCA and that the trial court properly granted
the plea to the jurisdiction.  We
overrule Appellants’ sole issue.

IV.  Conclusion

          Having overruled Appellants’
sole issue, we affirm the trial court’s judgment. 

 

 

BOB MCCOY
JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and
MEIER, JJ.

 

DELIVERED:  February 17, 2011











[1]In their response to Denton County’s plea to the jurisdiction, Appellants
stated that they chose “to continue on only their causes of action alleging
misuse of the EKG machine.”





[2]Denton
County argued that, “[a]t best, the [Appellants’] concerns go to alleged errors
in medical judgment and not the misuse of any tangible property which caused
Mr. Redden to have a heart attack.”





[3]The
prior version of the TTCA states,

 

Each unit of
government in the state shall be liable for money damages for property damage
or personal injuries or death when proximately caused by the negligence or
wrongful act or omission of any officer or employee acting within the scope of
his employment or office arising from the operation or use of a motor-driven
vehicle and motor-driven equipment, other than motor-vehicle equipment used in
connection with the operation of floodgates or water release equipment by river
authorities created under the laws of this state, under circumstances where
such officer or employee would be personally liable to the claimant in
accordance with the law of this state, or death or personal injuries so caused
from some condition or some use of
tangible property, real or personal, under circumstances where such unit of
government, if a private person would be liable to the claimant in accordance
with the law of this state. 

 

Act of May
28, 1983, 68th Leg., R.S., ch. 530, § 1, 1983 Tex. Gen. Laws 3084, 3085, repealed, recodified,
and amended by Act of May 17, 1985, 69th Leg., R.S., ch.
959, § 9, 1985 Tex. Gen. Laws 3242, 3322 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 101.021) (emphasis
added).

 





[4]That
is, the report by Dean Keeton to the legislature stated,

Most
negligent conduct that results in personal injury involves either the use of
tangible property or the creation or maintenance of a dangerous condition on
tangible property.  So it seems to me
that whereas this might appear to be a somewhat restrictive waiver of immunity
it is not so in fact.  It is a very
general one but productive of undesirable litigation over its meaning.

Salcedo, 659 S.W.2d
at 32.





[5]The
concurrence observed, “We are bound to follow Salcedo unless the Texas Supreme
Court overrules it.  Although having
ample opportunity to do so, the Supreme Court has not overruled its holding in Salcedo.”  Anderson,
120 S.W.3d at 9 (Marion, J., concurring).