

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00111-CV

LINELL REDDEN, INDIVIDUALLY
AND AS REPRESENTATIVE OF
THE ESTATE OF ROBERT JONES
REDDEN, DECEASED; SABRE
MARIE REDDEN; AND SEAN
MICHAEL REDDEN

APPELLANTS

V.

DENTON COUNTY

APPELLEE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

# OPINION

----------

## I. Introduction

In one issue, Appellants Linell Redden, individually and as representative of the estate of Robert Jones Redden, deceased; Sabre Marie Redden; and Sean Michael Redden (collectively, "Appellants") complain that the trial court erred by granting Appellee Denton County's plea to the jurisdiction. We affirm.

## II.  Background

Appellants sued Denton County under the Texas Tort Claims Act (TTCA) after Redden died while incarcerated in the Denton County Jail, alleging misuse of the county's electrocardiogram (EKG) machine by misinterpreting the data derived from it that led to his improper treatment and death, among other allegations not at issue here.[1]  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109 (Vernon 2005).

In support of their claim, Appellants alleged that Redden, who was incarcerated from May 1, 2006, until his death on July 9, 2006, informed jail personnel of his history of coronary artery disease.  On at least three occasions, Redden complained of chest pains "and other signs and symptoms of cardiac ischemia for which EKG testing was performed but for which no EKG assessment was made by qualified medical personnel," and facility employees "misused [the county's] EKG and the data derived from the EKG by failing to properly assess" Redden's cardiac problems pursuant to the county's protocols.  On July 9, Redden's symptoms worsened and he had a heart attack in the jail infirmary.

Denton County filed a plea to the jurisdiction, adding these additional facts:

- Redden reported to jail medical staff that he had had a heart attack eleven years before but that he was not currently seeing any doctor for his past heart

---

[1]In their response to Denton County's plea to the jurisdiction, Appellants stated that they chose "to continue on only their causes of action alleging misuse of the EKG machine."

2

attack, had not taken any prescription medicine for a heart condition in the last eight years, and was just taking aspirin;

- Redden was evaluated and treated in the jail infirmary on at least six occasions: June 10, June 18, June 19, June 30, July 5, and July 9, involving a variety of matters, including discharge from his left ear, chest pain, left elbow pain, throat pain, acid reflux, and "ultimately [a] heart attack";

- EKG tests were performed on June 10, June 19, and June 30 before Redden reported to the infirmary on July 9, complaining of "sweating, arms tingling, chest hurting," and received another EKG test.

- Redden suffered sudden cardiac arrest while in the infirmary;

- The medical examiner determined that Redden had experienced a sudden blood clot, and the medical cause of death was "Coronary Artery Thrombosis Due to Atherosclerosis Cardiovascular Disease";

- Medical Officer Day testified that if the EKG machine is not operating properly, it will not run a "strip," and the machine will let the operator know that there is a problem. A "strip" was printed each time the EKG machine was used on Redden.

In its plea, Denton County argued that it was protected by sovereign immunity, that "[t]he sole and very narrow issue . . . is whether tangible property was misused and such misuse caused" Redden to have a heart attack, and that, even though the EKG machine is tangible county property, there was no actionable misuse because the machine was working properly and the only machine-related complaint brought by Appellants pertained to the misinterpretation of the printouts by infirmary personnel.[2]

---

[2]Denton County argued that, "[a]t best, the [Appellants'] concerns go to alleged errors in medical judgment and not the misuse of any tangible property which caused Mr. Redden to have a heart attack."

In their response to Denton County's plea to the jurisdiction, Appellants specifically alleged that Denton County employees "found the [EKG] graphs revealed normal activity instead of ischemic changes and, based on that misinterpretation, treated Redden with antacids for heartburn rather than providing him with immediate cardiac care." They stated, "Simply put, if Denton County staff had not misinterpreted the EKG readings as acid reflux, Redden would have received the immediate medical treatment he needed for his heart and probably lived." Appellants never alleged that the EKG machine itself was not properly working. After a hearing, the trial court granted Denton County's plea to the jurisdiction, and this appeal followed.

### III. Plea to the Jurisdiction

The issue presented to this court can be distilled to a single question: Is *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 32 (Tex. 1983), which held that an allegation of misuse of tangible property by improper reading and interpretation of EKG graphs stated a claim under the TTCA, still good law regarding the "use" of an EKG machine, or has it been implicitly overruled by *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540 (Tex. 2003)?

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Tarrant County v. McQuary*, 310 S.W.3d 170, 172 (Tex. App.—Fort Worth 2010, pet. denied) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). The plea

4

challenges the trial court's subject matter jurisdiction. *Id.* Whether the trial court had subject matter jurisdiction is a question of law that we review de novo. *Id.* (citing *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002)).

The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject matter jurisdiction. *Id.* at 173 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in the plaintiff's favor, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Id*. (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

## B. Texas Tort Claims Act

A governmental entity is immune from suit except to the extent waived by the TTCA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001(3)(B), 101.021. Under the current version of the TTCA, a governmental unit's sovereign immunity is waived for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). That is, to state a claim under section 101.021(2), the plaintiff must allege that (1) property was used or misused by a governmental employee and (2) the use proximately caused personal injury or death. *Archibeque v. N. Tex. State Hosp.-Wichita Falls Campus*, 115 S.W.3d 154, 158 (Tex. App.—Fort Worth 2003, no pet.). The supreme court has defined "use" as "to put or bring into action or

5

service; to employ for or apply to a given purpose." *Whitley*, 104 S.W.3d at 542 (citing *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989)). Neither party disputes that the phrase "tangible personal property" includes EKG machines or that the EKG machine in question belonged to Denton County.

## C. "Use" of an EKG Machine

There is currently a split in authority with regard to "use" of an EKG machine. Some courts of appeals have held, implicitly or explicitly, that *Salcedo* is still the applicable law. *See, e.g.*, *Tex. Tech Univ. Health Sci. Ctr. v. Lucero*, 234 S.W.3d 158 (Tex. App.—El Paso 2007, pet. denied); *Univ. of Tex. Med. Branch Hosp. at Galveston v. Estate of Blackmon*, 169 S.W.3d 712 (Tex. App.— Waco 2005, pet. granted) (op. on reh'g), *vacated on jurisdictional grounds*, 195 S.W.3d 98 (Tex. 2006). Other courts have followed *Whitley*'s reasoning and treat *Whitley* as though it has overruled *Salcedo*. *See, e.g.*, *Tex. Tech Univ. Health Sci. Ctr. v. Ward*, 280 S.W.3d 345 (Tex. App.—Amarillo 2008, pet. denied); *Lanphier v. Avis*, 244 S.W.3d 596 (Tex. App.—Texarkana 2008, pet. dism'd as moot); *Kelso v. Gonzales Health Sys.*, 136 S.W.3d 377 (Tex. App.—Corpus Christi 2004, no pet.); *Anderson v. City of San Antonio*, 120 S.W.3d 5 (Tex. App.—San Antonio 2003, pet. denied). We must decide which path to follow.

### 1. *Salcedo v. El Paso Hospital District*

Everedo Salcedo died from a heart attack after he was given an EKG test in the emergency room—the results of which allegedly showed a classic pattern

6

for a heart attack—and then was released without treatment. *Salcedo*, 659 S.W.2d at 31. Salcedo's widow alleged that the hospital district was liable for his death under the TTCA based on misuse of the EKG equipment "by improperly reading and interpreting the electrocardiogram graphs and charts produced by the equipment." *Id.* at 32. The trial court dismissed her case for failure to state a claim under the TTCA, and the court of appeals affirmed. *Id.* at 31.

The supreme court reversed, first holding that "an allegation of defective or inadequate tangible property is not necessary to state a cause of action under the Act if 'some use' of the property, rather than 'some condition' of the property, is alleged to be a contributing factor to the injury." *Id.* at 32. It then determined that the widow's allegation that the hospital district was liable under the TTCA for misuse in improperly reading and interpreting the EKG graphs stated a claim. *Id.* at 31, 33 (stating, "[r]eading and interpreting are purposes for which an electrocardiogram graph is used or employed in diagnosing myocardial infarction").

To reach this holding, the supreme court construed language in an earlier version of the TTCA—specifically, the word "some" before "condition" and "use,"[3]

_____

[3]The prior version of the TTCA states,

Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-vehicle equipment used in

7

and the provision requiring liberal construction. *Id.* at 32, 33. It relied on Chief Justice Greenhill's concurring opinion in *Lowe v. Texas Tech University*, in which he noted that the statutory language—some "condition or use" of property—"implies that such property was furnished, was in bad or defective condition *or was wrongly used*" and in which he encouraged the legislature to express its intent to waive immunity more clearly. *Id.* at 32 (citing *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 301 (Tex. 1976) (Greenhill, C.J., concurring)). And the court noted that a senate report to the 62nd legislature recognized the difficulty that the language would cause courts[4] and expressed frustration that the language

> connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state, or death or personal injuries so caused from *some condition or some use of tangible property,* real or personal, under circumstances where such unit of government, if a private person would be liable to the claimant in accordance with the law of this state.

Act of May 28, 1983, 68th Leg., R.S., ch. 530, § 1, 1983 Tex. Gen. Laws 3084, 3085, *repealed, recodified, and amended by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242, 3322 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 101.021) (emphasis added).

[4]That is, the report by Dean Keeton to the legislature stated,

> Most negligent conduct that results in personal injury involves either the use of tangible property or the creation or maintenance of a dangerous condition on tangible property. So it seems to me that whereas this might appear to be a somewhat restrictive waiver of immunity it is not so in fact. It is a very general one but productive of undesirable litigation over its meaning.

*Salcedo*, 659 S.W.2d at 32.

8

continued to cause difficulty. *Id.* ("Seven years have passed since our opinion in *Lowe*, yet the legislature has not changed the troublesome waiver provision.").

The court then held that because reading and interpreting information are the purposes for which the EKG graphs are used in diagnosing a heart attack, this constituted use of tangible property and stated a claim under the TTCA. *Id.*; *see also Baston v. City of Port Isabel*, 49 S.W.3d 425, 429 (Tex. App.—Corpus Christi 2001, pet. denied) (holding that negligence in the use or misuse of an EKG machine that causes inappropriate treatment resulting in injury or death constitutes a permissible cause of action under the TTCA); *Univ. of Tex. Med. Branch Hosp. at Galveston v. Hardy*, 2 S.W.3d 607, 610 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (stating that the failure to monitor a cardiac monitor is indistinguishable from *Salcedo* as far as the use or misuse of tangible personal property is concerned); *Montoya v. John Peter Smith Hosp.*, 760 S.W.2d 361, 364 (Tex. App.—Fort Worth 1988, writ denied) (indicating a written record like the print out from an EKG machine may be tangible personal property "when it records a tangible situation, as in *Salcedo*"). However, the court has since limited *Salcedo* to its facts. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342 (Tex. 1998), *cert. denied*, 525 U.S. 1017 (1998).

## 2. Revision and Recodification of the TTCA

When *Salcedo* was decided on October 26, 1983, the TTCA provided for a waiver of sovereign immunity for death or personal injuries caused from "some" condition or "some" use of tangible property. *See* Act of May 28, 1983, 68th

9

Leg., R.S., ch. 530, § 1, 1983 Tex. Gen. Laws 3084, 3085 (repealed, recodified, and amended 1985). At that time, the TTCA also provided, "[t]he provisions of this Act shall be liberally construed to achieve the purposes hereof." *See* Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 13, 1969 Tex. Gen. Laws 874, 877, *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242, 3322. When the legislature recodified the TTCA, two years after *Salcedo*, it deleted the word "some" and repealed the provision mandating liberal construction, even though it also included a legislative comment that the "Act [was] intended as a recodification only," with no substantive change in the law intended. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, §§ 1, 9–10, 1985 Tex. Gen. Laws 3242, 3303, 3322.

Prior to *Whitley*, but after this amendment, the supreme court began to narrow *Salcedo*. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 178–79 (Tex. 1994). In *York*, a patient sued for negligence under the TTCA after he broke his hip during in-patient physical therapy and the hospital failed to diagnose the broken hip for nine days. *Id.* at 176. He alleged that the hospital misused tangible personal property by failing to note in his medical records about the broken hip or to follow a recommendation noted in the record for an x-ray of the hip to determine whether it was broken. *Id.* The court stated that information is intangible and "the fact that information is recorded in writing does not render the information tangible property." *Id.* at 179. It held that *Salcedo* did not permit claims against the State for misuse of information and that

10

"[w]hile paper itself can be touched, handled, and seen, medical information recorded on paper is not tangible personal property." *Id*. at 176, 179. Therefore, York failed to state a claim under the TTCA because there is no waiver of immunity for negligence involving the use, misuse, or nonuse of medical information. *Id.* at 176

### 3. *Dallas Area Rapid Transit v. Whitley*

Whitley, a cerebral palsy sufferer, sued the Dallas Area Rapid Transit Authority (DART) under the TTCA after a fellow bus passenger, Burkley, severely beat him and put him in the hospital for ten days. 104 S.W.3d at 542. Whitley had been verbally harassed and threatened by Burkley, and the bus driver resolved the dispute by depositing Whitley in a bad neighborhood and telling him he would return for him in a few minutes. *Id.* at 541–42. The bus did not return, and Burkley disembarked at the next stop, recruited her son and his friends to join her vendetta, and attacked Whitley. *Id.* at 542. Whitley sued DART for negligence, arguing that "his injuries ar[o]se from a use of the bus because the bus driver wrongfully ejected him in a remote and dangerous area of Dallas, allowed Burkley to deboard after she assaulted and threatened him in the driver's presence, and then failed to pick him up as promised." *Id*.

Noting first that it had consistently required "a nexus between the operation or use of a motor-driven vehicle or equipment and a plaintiff's injuries" that was more than mere involvement of the property, the court ultimately held that Whitley's injuries did not arise from the use of the bus but rather "from the bus

11

driver's failure to supervise the public, which is insufficient to waive immunity under the Tort Claims Act." *Id*. at 542–43. The court reasoned that, in this case, the use of the motor vehicle did no more than furnish the condition that made the injury possible because "Burkley and her accomplices caused Whitley's injuries[;] . . . the driver's failure to supervise Burkley may have contributed, but the operation or use of the bus did not." *Id*. at 543. Hence, there exists an argument that an EKG machine's readings furnish only a condition—information—that makes an injury possible and that, if the EKG machine is operated properly, it is not "misused" if its readings are improperly interpreted. *See id.*

### 4. Recent Case Law

As previously stated, some courts have taken *Whitley*'s reasoning and reached a result that would not have been reached under *Salcedo*. That is, considering the legislature's 1985 amendment of the TTCA, the supreme court's post-amendment narrowing of the scope of the TTCA's immunity waiver, and *Whitley*, these courts follow the rule that a medical machine's use—not its generated information—must cause injury because generated information does not constitute "use" under the TTCA.

In *Anderson*, for example, the San Antonio Court of Appeals held that the use of an EKG machine did not cause Richard Anderson's death by heart attack after he received two EKGs—the results of which were disputed—and was not transported to the emergency room despite his pleas that he was having a heart attack. 120 S.W.3d at 6–7, 9. Rather, Anderson's death was caused by his

12

cardiac condition and the alleged negligence of the emergency medical technicians.  *Id.* at 9.  A majority of the court stated that "in light of *Whitley*, we no longer believe that *Salcedo* is controlling."  *Id.*[5]

Similarly, in *Kelso*, the Corpus Christi Court of Appeals distinguished proper use of an EKG machine from the subsequent misuse or nonuse of information provided by it to uphold the trial court's grant of a hospital's plea to the jurisdiction, although it reversed and remanded to allow the Kelsos the opportunity to amend their pleading.  136 S.W.3d at 380, 382.  Daisy Kelso had an EKG performed but did not immediately receive medical treatment for her acute myocardial infarction until two hours after the EKG results showed that she was having a heart attack.  *Id.* at 380.  The court held that "the use or misuse of an EKG [machine] is distinguishable from the use or misuse of information."  *Id.* at 382.  That is, if the machine is correctly used, "any subsequent misuse or nonuse of the information it reveals about a patient's medical condition does not waive immunity under the [TTCA], as it was the use of the information, not the tangible property, which was the proximate cause of injury."  *Id.*

Further, in *Ward*, the Amarillo Court of Appeals held that a stillborn child's parents, who sued a hospital alleging that misuse of information from the fetal heart rate monitor caused the child's death, failed to allege that the monitor itself

---

[5]The concurrence observed, "We are bound to follow *Salcedo* unless the Texas Supreme Court overrules it.  Although having ample opportunity to do so, the Supreme Court has not overruled its holding in *Salcedo*."  *Anderson*, 120 S.W.3d at 9 (Marion, J., concurring).

was incorrectly used or that its results were erroneous, and therefore failed to state a claim under the TTCA. 280 S.W.3d at 356 ("Rather, they couched their allegations as 'failing to recognize and respond,' which are allegations of misuse of information and negligence by medical staff."). The court reached this result by reviewing the TTCA, its revisions following *Salcedo*, and the numerous cases after *Salcedo*, including *Whitley*. *Id.* at 349–55. It observed that the supreme court's trend has been to limit *Salcedo* and to apply section 101.021(2) narrowly regarding use of tangible personal property. *Id.* at 351–53; *see also Lanphier*, 244 S.W.3d at 606–07 (holding that stillborn's mother failed to state a claim under the TTCA when she alleged that the nurses should have taken alternate actions based on the information contained in the fetal monitor strips and not that they misused the fetal monitor itself because information is not "tangible property").

On the other hand, some courts continue to follow *Salcedo*. The tenor of these cases is that the supreme court has had opportunities to overrule *Salcedo* and has not done so; thus, the misuse of information from medical machines continues to constitute "use" under the TTCA.

In *Blackmon*, for example, the Waco Court of Appeals held that allegations that a prison nurse failed to properly use diagnostic medical tools stated a claim under the TTCA. 169 S.W.3d at 716, 722–23. An inmate died of pneumonia following an examination by a prison nurse using a pulse oxymeter, stethoscope, and thermometer, and the results of the examination did not, but allegedly should

14

have, resulted in a referral to a physician for treatment. *Id.* at 714–15. The court stated, "[W]e do not believe that the supreme court—without telling us so, despite many opportunities—has . . . fashioned a new rule of law in TTCA cases that the property itself must be the actual instrument that physically caused the harm." *Id.* at 721. It reasoned that although the actual physical instruments themselves did not kill Blackmon, the fact that her immediate and direct cause of death was untreated pneumonia did not foreclose the alleged negligent use or misuse of the stethoscope and pulse oxymeter from being a proximate cause of her death under the TTCA because they were tangible personal property whose purposes were to assist in the assessment of Blackmon's lung functioning, and if they had been properly used, she would have received life-saving treatment. *Id.* at 721–22.

Likewise, in *Lucero*, the El Paso Court of Appeals applied *Salcedo* to hold that misuse of an abdominal CT scan and the related failure to diagnose a bile leak that resulted in the patient's death stated a claim under the TTCA. 234 S.W.3d at 163–64, 172. The court disagreed with the San Antonio court's refusal to apply *Salcedo* in *Anderson*, distinguished *Whitley* as not involving misuse of diagnostic medical equipment, and held that "[l]ike the [EKG] graph in *Salcedo*, an abdominal CT scan and its films are used in diagnosing various conditions of the abdomen. The *Lucero* plaintiffs alleged and offered evidence to prove that there was a misuse of the abdominal CT scan[;]" therefore, sovereign immunity was waived. *Id.* at 171–72.

15

**5. Analysis**

We are persuaded by the reasoning of our sister courts in holding that the "use" of tangible property must involve the use of a medical machine, not the "use" of information from the medical machine. *See Ward*, 280 S.W.3d at 356; *Kelso*, 136 S.W.3d at 380, 382; *Anderson*, 120 S.W.3d at 6–7, 9. We base our decision on the following factors. First, a plain reading of the TTCA requires that the use of tangible property cause personal injury or death. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). It is undisputed here that the EKG machine itself did not injure Redden. Nor was it alleged that the machine produced inaccurate information that led to his death. Rather, Appellants alleged only that the accurate information produced by the machine was misused by the medical staff. Therefore, it is the medical staff that allegedly caused Redden's death, not the machine or the machine's use.

Second, as noted above, information is not tangible property. *York*, 871 S.W.2d at 178–79; *see also Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (stating that information in an emergency room procedures manual is not tangible property). In *Gainesville Memorial Hospital v. Tomlinson*, we stated,

> Tomlinson's allegation is that GMH used, misused, or failed to use laboratory *results*. Laboratory results are not tangible property merely because they are recorded on paper which is tangible. This constitutes an allegation of use or misuse of information. Information itself is an abstract concept, lacking corporeal, physical, or palpable qualities, and therefore, intangible. Because this claim does not demonstrate the use or misuse of tangible property, it must fail.

16

48 S.W.3d 511, 514 (Tex. App.—Fort Worth 2001, pet. denied) (citing *York*, 871 S.W.2d at 178–79); *see also Arnold v. Univ. of Tex. Sw. Med. Ctr. at Dalla*s, 279 S.W.3d 464, 469 (Tex. App.—Dallas 2009, no pet.) ("[I]nformation that may or may not be documented in a patient's medical records does not constitute tangible personal property for waiver under the TTCA"); *Gipson v. City of Dallas*, 247 S.W.3d 465, 471–72 (Tex. App.—Dallas 2008, pet. denied) (holding that because information is not tangible personal property but rather "an abstract concept that lacks corporeal, physical, or palpable qualities," immunity was not waived under TTCA based on allegation that delay resulting from ambulance driver's failure to timely respond to dispatcher's announcement caused patient's death).

Third, while we acknowledge that *Whitley* involved a bus and not a medical machine, and that the supreme court did not explicitly overrule *Salcedo* in that case or in any other to-date, the supreme court clearly distinguished the use of the bus, which involved the use of tangible property, from the improper actions of the bus driver, which did not. *See Whitley*, 104 S.W.3d at 543. Therefore, while Redden's treatment involved the use of the EKG machine, it was only the alleged misuse of the machine's information, which is not tangible property, that caused his death. We therefore hold that the claim as alleged does not fall under the TTCA and that the trial court properly granted the plea to the jurisdiction. We overrule Appellants' sole issue.

## IV.  Conclusion

Having overruled Appellants' sole issue, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  February 17, 2011

18