

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00111-CV
_____

MARIA CERVANTES, INDIVIDUALLY AND AS NEXT FRIEND OF ALEK GONZALEZ,
AND OMAR GONZALEZ, INDIVIDUALLY AND AS NEXT FRIEND OF ALEK
GONZALEZ, Appellants

V.

JOSEPH MORRIS MCKELLAR, M.D., D/B/A O.B. ASSOCIATES; CARTER J. MOORE,
M.D.; CARTER J. MOORE, M.D., P.A.; REBECCA THOMAS, CRNA; CLINICAL
PARTNERS, P.A.–MT. PLEASANT, AND TITUS REGIONAL MEDICAL CENTER,
Appellees

On Appeal from the 276th District Court
Titus County, Texas
Trial Court No. 35429

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

# OPINION

In this medical negligence case, Maria Cervantes, Individually and as Next Friend of Alek Gonzalez, and Omar Gonzalez, Individually and as Next Friend of Alek Gonzalez,[1] appeal the trial court's order granting Titus Regional Medical Center's plea to the jurisdiction. We affirm the judgment of the trial court.

## I.      Factual and Procedural Background

Cervantes was admitted to Titus Regional Medical Center (Titus) during the course of her high-risk twin pregnancy in August 2008 with suspicion of preeclampsia.[2] Approximately twenty-eight hours after her admission, a non-stress test was initiated at 5:43 p.m. The test indicated that one of the fetus' heart rate patterns was nonreassuring, indicating fetal distress. At 6:20 p.m., the administering nurse contacted Cervantes' physician to inform him of the nonreassuring fetal heart rate tracings. When the twin Alek was delivered via caesarian section (at 7:28 p.m.), he was diagnosed with encephalopathy.[3]

Cervantes filed suit, asserting health-care liability claims against Titus, among others. Specifically, Cervantes alleged that Titus was negligent in "monitoring the external fetal heart rate monitor . . . overseeing the external fetal heart rate monitor . . . interpreting the external fetal heart rate monitor, and . . . responding to the external fetal heart rate monitor."

---

[1]Appellants will be identified as "Cervantes."

[2]Preeclampsia is "a serious condition developing in late pregnancy that is characterized by a sudden rise in blood pressure, excessive weight gain, generalized edema, proteinuria, severe headache, and visual disturbances and that may result in eclampsia if untreated." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 978 (11th ed. 2006).

[3]Encephalopathy is "a disease of the brain; *esp* : one involving alterations of brain structure." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 410 (11th ed. 2006).

Titus, a governmental unit of the State of Texas, filed a plea to the jurisdiction, alleging Cervantes failed to demonstrate a use or misuse of property that caused the complained-of injuries. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011). Titus further alleged that Cervantes failed to provide notice as required during the six-month timeframe after the occurrence of the alleged injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a) (West 2011). Cervantes responded that the failure to adequately monitor the fetal heart rate device was a "use" of tangible personal property which proximately caused Alek's injuries and that Titus had actual notice of the injuries at issue. The trial court recited two reasons why it granted the plea to the jurisdiction: (1) it found that "failure to exercise sufficient care in monitoring a patient is not use of tangible personal property. There was no showing that the monitor itself was faulty or misused or that information from it was inaccurate" and (2) it ruled that "the staff had a duty to report concerning the lack of quality of care rendered to a patient, but there is no record of any report or review showing such lack of care." Cervantes appeals, claiming the plea was improperly granted. Specifically, Cervantes contends she adequately pled (1) that misuse of tangible personal property proximately caused Alek's injuries and (2) that Titus had actual notice of her claims.

Because we conclude the substance of Cervantes' allegations do not concern the use of tangible personal property and thus fall outside of the Texas Tort Claims Act's (TTCA or Act) waiver of sovereign immunity, we affirm the judgment of the trial court.

3

## II.   Analysis

Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the State or certain governmental units have been sued unless the State consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).  In reviewing a trial court's ruling on a plea to the jurisdiction, we first look to the pleadings to determine if jurisdiction is proper.  *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009).  We construe the pleadings in favor of the non-movant.  *Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).  Whether a trial court has subject-matter jurisdiction is a question of law which is subject to de novo review.  *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).  In determining whether Cervantes has alleged facts supporting a finding of a waiver of sovereign immunity, we look at the substance of her pleadings rather than to her characterization of them.  *Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102, 106 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence on that issue. *Kirwan*, 298 S.W.3d at 622.  If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the plea to the jurisdiction is determined as a matter of law.  *Id*.

It is undisputed that Titus is a governmental unit.[4]  The TTCA provides a limited waiver of governmental liability from suit when personal injury or death is "caused by a condition or use

---

[4]Titus' status as a political subdivision of the State of Texas protected by sovereign immunity is undisputed. Dorothy Brightwell, Titus' risk manager, testified by affidavit that Titus County Hospital District was created by the Legislature and does business as Titus Regional Medical Center.  *See* Act of May 9, 1963, 58th Leg., R.S., ch. 298, §§ 1–20, 1963 Tex. Gen. Laws 771, 771–77 (creating Titus County Hospital District); TEX. CIV. PRAC. & REM.

4

of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). In order to fall within this limited exception, Cervantes must allege the injuries here were proximately caused by the use of tangible personal property. *See Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342–43 (Tex. 1998); *see also Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542–43 (Tex. 2003) (requiring nexus between use of tangible property and plaintiff's injuries). Incidental involvement of the property alone is insufficient to waive sovereign immunity. *Bossley*, 968 S.W.2d at 343. Property does not cause the injury if it simply furnishes the condition that makes the injury possible. *Id*. Instead, a causal nexus must exist between the use of the property and the plaintiff's injury. *Whitley*, 104 S.W.3d at 543; *Bossley*, 968 S.W.2d at 342–43. Further, "[a] governmental unit does not waive its immunity by 'using, misusing, or not using information.'" *Cherry v. Tex. Dep't of Criminal Justice*, 978 S.W.2d 240, 242–43 (Tex. App.—Texarkana 1998, no pet.) (quoting *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994)).

Here, Cervantes relies on *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30 (Tex. 1983), for the proposition that it is not necessary to allege that tangible property is inadequate or defective in order to state a claim under the TTCA, if some use of the property is a contributing factor to the injury. In that case, Salcedo presented at El Paso Hospital District's emergency

---

CODE ANN. § 101.001(3)(B) (West Supp. 2013) ("'Governmental unit' means . . . a political subdivision of this state."); TEX. HEALTH & SAFETY CODE ANN. § 571.003(19) (West Supp. 2013) (defining term "Political Subdivision" to include hospital district); *Gaskin v. Titus Cnty. Hosp. Dist*., 978 S.W.2d 178, 180 (Tex. App.—Texarkana 1998, pet. denied) (holding Titus County Hospital District is governmental unit under TTCA); Tex. Att'y Gen. Op. No. GA-0757 (2010) (presuming Titus Regional Medical Center is operated by Titus County Hospital District).

room with severe chest pain. An EKG was administered, and although classic patterns of a heart attack could be seen, Salcedo was released. He died shortly after returning home. Salcedo's wife sued the hospital, alleging that it "misused the equipment and tangible property . . . by improperly reading and interpreting the electrocardiogram graphs and charts produced by such equipment." *Id*. at 32. Finding that the allegations stated a cause of action under the TTCA, the court reversed the trial court's grant of the hospital's plea. It reasoned that because "[r]eading and interpreting are purposes for which an electrocardiogram graph is used or employed in diagnosing myocardial infarction, . . . Mrs. Salcedo has alleged her loss was proximately caused by the negligence of the hospital district's employees in the use of tangible property." *Id*. at 33. The high court thus concluded that Salcedo's allegations stated a cause of action within the scope of the Act's waiver provisions. *Id*.

Cervantes appropriately recognizes that the breadth of the high court's holding in *Salcedo* has been limited during the three decades since that opinion was released. As discussed by several appellate courts, at the time of the *Salcedo* decision,

> [T]he TTCA provided for a waiver of sovereign immunity for death or personal injuries caused from "some" condition or "some" use of tangible property. *Redden v. Denton Cnty*., 335 S.W.3d 743, 748 (Tex. App.—Fort Worth 2011, no pet.); *Tex. Tech Univ. Health Scis. Ctr. v. Ward*, 280 S.W.3d 345, 349–50 (Tex. App.—Amarillo 2008, pet. denied); *see* Act of May 28, 1983, 68th Leg., R.S., ch. 530, § 1, 1983 Tex. Gen. Laws 3084, 3085 (repealed, recodified, and amended 1985). At that time, the TTCA also provided, "[t]he provisions of this Act shall be liberally construed to achieve the purposes hereof." *Redden*, 335 S.W.3d at 748; *Ward*, 280 S.W.3d at 350; *see* Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 13, 1969 Tex. Gen. Laws 874, 877, repealed by Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242, 3322. When the legislature recodified the TTCA two years after *Salcedo*, it deleted the word "some" and repealed the provision mandating liberal construction. *Redden*, 335 S.W.3d at

748; *Ward*, 280 S.W.3d at 350; *see* Act of May 17, 1985, 69th Leg., R.S., ch. 959, §§ 1, 9–10, 1985 Tex. Gen. Laws 3242, 3303, 3322.

*Univ. of Tex. Med. Branch at Galveston v. Kai Hui Qi*, 402 S.W.3d 374, 382 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Following the recodification of the TTCA in the wake of *Salcedo*, the high court narrowed the scope of *Salcedo*'s holding in 1994 when it distinguished *Salcedo* from a scenario in which the plaintiff alleged injury caused by the failure to memorialize symptoms in writing and the failure to follow a recommendation noted in the medical records to order an x-ray. The high court found that, unlike *Salcedo*, allegations of misuse of medical records did not constitute the use or misuse of tangible property. "Information itself is an abstract concept, lacking corporeal, physical, or palpable qualities. Information, thus, is intangible; the fact that information is recorded in writing does not render the information tangible property." *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex. 1994). Thus, "*Salcedo* does not permit claims against the State for misuse of information." *Id.*

Four years later, the Texas Supreme Court limited the *Salcedo* decision to its facts, stating that for immunity to be waived, "personal injury or death must be proximately caused by a condition or use of tangible personal or real property." *Bossley*, 968 S.W.2d at 342–43. The court explained that while involvement of property was necessary, such involvement, absent causation, was insufficient. *Id.* at 342–43.

In 2001, the Texas Supreme Court decided *Texas Department of Criminal Justice v. Miller*, 51 S.W.3d 583 (Tex. 2001). In that case, Miller (a prison inmate) was treated with various medications for nausea and severe headaches before he was diagnosed with meningitis

7

and ultimately died. *Id*. at 585. Miller's widow sued, claiming her husband died as a result of the improper administration of pain medication, improperly reading and interpreting fever-detecting equipment, and improperly using clinic facilities and equipment in her husband's diagnosis and treatment. *Id*. In reversing the court of appeals' denial of TDCJ's plea to the jurisdiction, the Texas Supreme Court noted,

> "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." TDCJ did "bring into . . . service" and "employ" various drugs and medical equipment while treating Miller, but that some property is merely involved is not enough. Using that property must have actually caused the injury. The property "used" on Miller did not.

*Id*. at 588 (citations omitted).

In 2003, the Texas Supreme Court held that sovereign immunity barred suit against the Dallas Area Rapid Transit when a city bus driver resolved a dispute between two bus passengers by depositing one of the passengers in a bad neighborhood. The passenger, who suffered from cerebral palsy, was thereafter severely beaten by the other passenger, who disembarked at the next stop. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540 (Tex. 2003). Whitley sued, arguing that "his injuries ar[o]se from a use of the bus because the bus driver wrongfully ejected him in a remote and dangerous area of Dallas, allowed Burkley to deboard after she assaulted and threatened him in the driver's presence, and then failed to pick him up as promised." *Id*. at 542.

Noting first that it had consistently required "a nexus between the operation or use of a motor-driven vehicle or equipment and a plaintiff's injuries" that was more than mere involvement of the property, the court ultimately held that Whitley's injuries did not arise from

8

the use of the bus but rather "from the bus driver's failure to supervise the public, which is insufficient to waive immunity under the Tort Claims Act." *Id*. at 542–43. The court reasoned that in this case, the use of the bus did no more than furnish the condition that made the injury possible because "Burkley and her accomplices caused Whitley's injuries . . . the driver's failure to supervise Burkley may have contributed, but the operation or use of the bus did not." *Id*. at 543.

Some appellate courts have continued to apply *Salcedo* to find waiver of immunity under the Act based on use of cardiac monitors, CT scans, and other diagnostic medical equipment. For example, in a case on which Cervantes relies here, the plaintiff alleged a failure to diagnose a bile leak based on the negligent misuse of a CT scan that indicated liver abscess. *Tex. Tech Univ. Health Scis. Ctr. v. Lucero*, 234 S.W.3d 158 (Tex. App.—El Paso 2007, pet. denied). The hospital claimed that the allegation complained of non-use of medical information, a claim for which sovereign immunity is not waived. The court found that the CT scan films like the EKG in *Salcedo* could constitute tangible property and that plaintiff's allegations of misuse were sufficient to waive sovereign immunity.

Other decisions relying on *Salcedo* (and cited by Cervantes) include *University of Texas Medical Branch at Galveston v. Estate of Blackmon ex. rel. Shultz*, 169 S.W.3d 712 (Tex. App.—Waco 2005, pet. granted), *vacated on jurisdictional grounds*, 195 S.W.3d 98 (Tex. 2006) and *University of Texas Medical Branch Hospital at Galveston v. Hardy*, 2 S.W.3d 607 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Because the court of appeals' judgment in *Blackmon* has been vacated, we limit our discussion to *Hardy*.

9

In the *Hardy* case, the plaintiff alleged that the failure to properly monitor a cardiac monitor was the proximate cause of a patient's injuries and death. *Hardy*, 2 S.W.3d at 608–09. While recovering from bypass surgery, the decedent "was connected to a cardiac monitor which was intended to monitor her heart's activity and signal an alarm if any problem occurred." *Id*. at 608. When the monitor signaled an alarm indicating heart stoppage, resuscitation efforts were not commenced until at least five minutes following the first alarm from the monitor. *Id*. at 608– 09. The doctors were able to revive the patient, but not before oxygen deprivation left the patient on life support with severe brain damage. *Id*. at 609. The patient never regained consciousness and was eventually removed from life support systems. *Id*.

The plaintiff brought a wrongful death and survival action against the hospital, alleging that the negligent use of the cardiac monitor was the proximate cause of the death of the decedent. *Id*. She alleged that the hospital's staff failed to properly oversee the monitor. *Id*. In affirming the trial court's denial of the hospital's plea to the jurisdiction, the court relied heavily on *Salcedo*, 659 S.W.2d at 33. The court concluded that the use of the cardiac monitor in *Hardy*, like the EKG machine in *Salcedo*, directly affected and impacted the person whose heart condition was being monitored. *See Hardy*, 2 S.W.3d at 610.

In 2008, this Court rejected the reasoning employed by the *Hardy* court in *Lanphier v. Avis*, 244 S.W.3d 596 (Tex. App.—Texarkana 2008, pet. dism'd as moot), *disapproved on other grounds*, *Franka v. Velasquez*, 332 S.W.3d 367, 382 n.67 (Tex. 2011). *Avis* involved a health-care liability claim against the two nurses alleging negligence in failing to properly carry out their nursing responsibilities. Even though a fetal monitor strip showed Avis' fetus to be in

10

distress after she became extremely sick with high fever, her labor was allowed to proceed for eight hours. After the nurses were unable to locate a fetal heart tone, a cesarean section was performed, and the baby was delivered stillborn.

Avis sued, alleging that "'[the] nurses . . . allowed [Avis's] labor to proceed over the next eight (8) hours even though her fetal monitor strips showed that her baby was in distress,'" the nurses "'never inserted a fetal scalp electrode,'" and "'[a] timely delivery would have allowed [the] baby to survive.'" *Avis*, 244 S.W.3d at 606–07. In determining whether these allegations effectively waived sovereign immunity under the TTCA, this Court examined two cases, in particular, which apparently were in conflict. We initially examined *Kelso v. Gonzales Healthcare Systems*, 136 S.W.3d 377 (Tex. App.—Corpus Christi 2004, no pet.).

In that case, Kelso presented to the emergency room with symptoms of a heart attack. Although an EKG performed by hospital personnel indicated Kelso was suffering from a heart attack, she did not receive treatment until two hours after these results were known. In her suit for damages resulting from injuries caused by the delayed treatment, Kelso alleged that the injuries were caused by the misuse of tangible personal property, i.e., the EKG testing machine. *Id*. at 380. Kelso did not affirmatively allege that the EKG was incorrectly used or that its results were erroneous. Instead, the injury occurred after the EKG was correctly used and provided accurate results. In holding that immunity was not waived, the court noted that "[i]f an EKG machine is correctly used, any subsequent misuse or nonuse of the information it reveals about a patient's medical condition does not waive immunity under the statute, as it was the use of the information, not the tangible property, which was the proximate case of injury." *Id*. at 382. The

11

court noted that it was the misuse of the information produced by the EKG machine rather than misuse of the device itself that represents the proximate cause of the injury. *Id.*

We then contrasted the result in *Kelso* with that of *Hardy*, stating,

A careful study of *Kelso* and *Hardy* reveals what may be the critical distinction between the two cases. In *Kelso*, the device generated information from which the doctor then had to make a diagnosis and plan a course of treatment. The apparent misinterpretation of the information would not qualify as use of tangible property within the TTCA. In *Hardy*, however, the purpose of the monitor was not necessarily limited to generating information. Rather, the monitor in *Hardy* was intended to signal complications and its purpose required that it be constantly monitored. In other words, the negligence in *Kelso* related to the proper interpretation, whereas the alleged negligence in *Hardy* was the failure to properly use the device for the very purpose it was intended. The distinction between the two fact circumstances seems so finite (an alarm on a monitor when a critical set of circumstances arises versus no alarm on an EKG machine to signal the examiner of the test results when irregularities are present) that the results appear to be in conflict. We believe the analysis in *Kelso* to be more persuasive.

*Avis*, 244 S.W.3d at 605.

Having found the analysis in *Kelso* to be more persuasive, we determined that the substance of Avis' allegations did not concern the use of tangible property, but were more akin to the misuse of information provided by the monitor, which is not considered tangible property under the Act. *Id.* at 605–06. Avis' allegations thus fell outside the TTCA's waiver of sovereign immunity. *Id.* at 606. We further noted,

Avis does not allege that the nurses failed to watch the monitor or that they used the monitor improperly. Nor does she allege that the injuries to her infant were caused by a device used during delivery. Rather, her allegations seem to fall more in line with those in *Kelso* in that she alleges that the nurses should have taken alternate actions based on the information generated by the monitor.

*Id.* We also stated, "Since Avis's allegations here are more accurately characterized as allegations that the nurses took the wrong course of action based on the information from the monitor, we reiterate that information is not treated as tangible property under the TTCA." *Id.*

Other intermediate appellate courts have reached the same conclusion on similar facts. For example, in *Texas Tech University Health Sciences Center v. Ward*, 280 S.W.3d 345 (Tex. App.—Amarillo 2008, pet. denied), the parents of a stillborn child alleged that misuse of information from a fetal heart rate monitor caused the child's death, but failed to allege that the monitor was incorrectly used or that its results were erroneous. "Rather, they couched their allegations as 'failing to recognize and respond,' which are allegations of misuse of information and negligence by the medical staff." *Id.* at 356. As a result, the court held that the Wards failed to state a claim under the Act. *Id.* In arriving at this conclusion, the court recognized the legislative and judicial limitations on *Salcedo*:

> In conducting a de novo review, we conclude the following: *Salcedo* was decided under the pre-codified version of the Act which called for liberal construction of the waiver provisions. Since then, the mandate for liberal construction has been repealed. Additionally, the Supreme Court has interpreted the limited waiver provisions of the Act more narrowly. Intermediate appellate courts have struggled with the waiver provisions of the Act resulting in conflicting decisions. However, given the Legislature's post-*Salcedo* changes to the Act in 1985, i.e., deletion of the word "some" before use and condition, elimination of the mandate to liberally construe the waiver provisions, and given the Supreme Court's trend to limit *Salcedo* and narrowly apply § 101.021(2) to cases involving a causation nexus between the use of tangible property and complained of injury or death, we hold the Wards have not demonstrated that "use" of the fetal heart rate monitor caused their injury.

*Id.* at 356.

13

The case of *Anderson v. City of San Antonio*, 120 S.W.3d 5 (Tex. App.—San Antonio 2003, pet. denied), involved a death caused by cardiac arrest. After Emergency Medical Technicians (EMTs) were dispatched to Anderson's home to provide emergency assistance following complaints of chest pain, they performed EKG tests and decided not to transport Anderson to the hospital. Anderson died of a heart attack later that day. *Id.* at 6. The city was sued for the EMTs' failure to transport Anderson to the hospital because they "negligently misinterpreted the EKG and ignored his pleas that he was having a heart attack." *Id.* In the face of a plea to the jurisdiction, the plaintiffs argued that the improper use of the EKG machine constituted a misuse of tangible personal property under the Act. *Id.* at 6–7. Applying the *Whitley* analysis, the court determined that Anderson's death was caused by his cardiac condition and the EMTs' alleged negligence, but it was not caused by the use of the EKG machine itself. "In light of *Whitley*, we no longer believe that *Salcedo* is controlling." *Id.* at 9. The court thus concluded that the plaintiffs' lawsuit was barred by sovereign immunity. *Id.*

Similarly, in *Redden v. Denton County*, 335 S.W.3d 743, 751 (Tex. App.—Fort Worth 2011, no pet.), EKGs were performed on Redden after repeated complaints of chest pains. After Redden died of a heart attack, plaintiffs sued, alleging misuse of the EKG machine by misinterpreting the data derived therefrom, which led to improper treatment and death. *Id.* at 744. The *Redden* court, "persuaded by the reasoning of our sister courts," held that "the 'use' of tangible property must involve the use of a medical machine, not the 'use' of information from the medical machine." *Id.* at 751. Because the EKG machine itself did not cause any injury, and

14

because the plaintiffs only alleged misuse of the machine's information, which is not tangible property, the court held that the claim did not fall within the Act's waiver provisions.

More recently, the Houston 14th District Court reversed the trial court's denial of the hospital's plea to the jurisdiction in *Kai Hui Qi*, 402 S.W.3d 376. In that case, Kai Hui Qi sued the University of Texas Medical Branch (UTMB) after delivering a stillborn child. Qi alleged that hospital "'employees were negligent in the use of the blood pressure cuffs/testing equipment and urine test strips, by improperly reading and interpreting the results produced by the testing equipment' which 'led directly to [Qi]'s preeclampsia, which directly resulted in the death of [Qi]'s unborn child and to the injuries' Qi suffered.'" *Id*. at 377. The court concluded that Qi's suit

> does not invoke the limited waiver of sovereign immunity found in the Texas Tort Claims Act because Qi's allegations do not meet the Act's requirement that the use of tangible personal property caused the stillbirth and injury, and the substance of Qi's claim is that UTMB's employees failed to timely diagnose and treat Qi for preeclampsia and induce delivery of her baby.

*Id*. at 381. In arriving at this conclusion, the court noted that Qi's reliance on *Salcedo*, *Lucero*, and *Hardy* was misplaced in light of the caselaw developments after *Salcedo*. *Id*. at 382.

Here, Cervantes' pleadings complain that Titus' nurses failed to properly use information provided by a fetal heart monitor by negligently "monitoring," "overseeing," "interpreting," and "responding to the external fetal heart rate monitor." Cervantes does not claim that a condition or use of the fetal heart monitor caused injury. Instead, she complains that injury was caused by delayed delivery due to the nurses' failure to timely respond to information provided by the

15

monitor.  The expert reports filed on Cervantes' behalf confirm the nature of Cervantes' claim against Titus.  Robert O. Atlas, M.D., stated in his report,

> Furthermore, failure by the nursing staff to promptly recognize a very abnormal fetal heart rate tracing was below the acceptable standard of care.  The nursing staff did not rapidly notify Dr. McKellar in a timely manner further delaying the delivery of this twin gestation.

Atlas essentially opined that Titus' nurses were negligent in failing to timely respond to the information produced by the monitor, not that the device was defective or otherwise caused injury.

Cervantes' second expert, Paul O. Gatewood, M.D., opined that Titus' nurses fell below the appropriate standard of care by failing to "properly read the fetal monitoring strip" and failing to "respond in a timely manner to prepare and transport the patient to the OR."  In an addendum to his report, Gatewood's comments indicate that the monitor was, indeed, functioning properly as it provided correct information that one fetus was in distress while the other was not:

> On admission, when the fetal monitor was used starting at 17:43 on 8-9-08 . . . a matched control – namely Twin A and Twin B – existed for comparison.  Twin A's reactive strip and Twin B's nonreactive strip with persistent recurring nonvariable decelerations and absent long-term variability, indicated decreased oxygenation levels – hypoxemia.  This represents fetal intolerance to intrauterine environment, or the old term, fetal distress.

Gatewood further noted, "As a practicing obstetrician, I expect a labor and delivery nurse to properly interpret a fetal monitor strip . . . and recognize the urgency of effectuating a rapid response to prepare for the Caesarean section."

Cervantes' pleadings and expert opinions indicate that her claim against Titus is for the alleged misuse of accurate information provided by a fetal heart monitor, together with Titus' alleged failure to provide prompt treatment in response to that information.

For purposes of the TTCA, it is well-settled that "tangible personal property refers to something that has a corporeal, concrete, and palpable existence." *York*, 871 S.W.2d at 178. By contrast, "information itself is an abstract concept, lacking corporeal, physical, or palpable qualities." *Id*. at 179. Information is, therefore, "intangible" and "the fact that information is recorded in writing does not render the information tangible property." *Id*. As the Texas Supreme Court held, "In providing for waiver of governmental immunity for injuries caused by the use of tangible personal property, the Legislature has not, by clear and unambiguous language, eliminated governmental immunity for injuries resulting from the misuse of information." *Id*.

Consistent with this principle, this and other Texas appellate courts have held that allegations of failure to appropriately respond to information produced by medical monitoring equipment—including fetal heart and other cardiac monitors—do not involve the use of tangible property and thus do not fall within the Act's limited waiver of immunity. *See, e.g.*, *Redden*, 335 S.W.3d at 746; *Ward*, 280 S.W.3d at 356; *Avis*, 244 S.W.3d at 607; *Anderson*, 120 S.W.3d at 9.

Cervantes' allegations of negligent interpretation and delayed response to information do not involve the use of tangible personal property and thus do not fall within the TTCA's waiver provisions. Accordingly, Cervantes has failed to demonstrate that the trial court erred by granting Titus' plea to the jurisdiction.

17

Cervantes seeks the opportunity to amend her pleadings in the event we find that her pleadings do not affirmatively negate the existence of jurisdiction. A plaintiff should generally be afforded a reasonable opportunity to amend defective pleadings unless the pleadings demonstrate incurable defects or negate the existence of jurisdiction. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). Here, Cervantes has failed to plead sufficient facts supporting her assertion that the negligent use of tangible personal property caused the injuries alleged. Because Cervantes' allegations are incurably defective, Cervantes cannot cure those defects by pleading more detailed facts to support her assertions. *See, e.g.*, *Kai Hui Qi*, 402 S.W.3d at 390.

Because we find that the trial court properly granted Titus' plea to the jurisdiction, we need not address Cervantes' claim that Titus received adequate notice required for waiver of immunity under the Act.

## III.    Conclusion

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:    January 28, 2014
Date Decided:      February 19, 2014