

**NUMBER 13-18-00485-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTUS SPOHN HEALTH
SYSTEM CORPORATION D/B/A
CHRISTUS HOSPITAL CORPUS
CHRISTI-SHORELINE,                                                    Appellant,

v.

JAMIE DANIEL GRACIA AND
RACHEL GRACIA,                                                       Appellees.

On appeal from the 214th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Longoria**

This is an interlocutory appeal from an order denying appellant Christus Spohn Health System Corporation d/b/a Christus Hospital Corpus Christi-Shoreline's (Spohn) plea to the jurisdiction. We reverse and render judgment dismissing the case.

## I. BACKGROUND

Appellees Jamie Daniel Gracia and Rachel Gracia brought a health care liability claim against Spohn[1] alleging negligence in the post-surgical care and treatment of Jamie. Spohn filed a plea to the jurisdiction asserting that it is a "hospital district management contractor." *See* TEX. HEALTH & SAFETY CODE ANN. § 285.071. Spohn argued that as a hospital district management contractor, it is entitled to governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3). Spohn urged that the Gracias failed to prove that their claims fell within the waiver of immunity under the Texas Tort Claims Act (TTCA) and as such, Spohn is entitled to dismissal. *See id*. § 101.021. The Gracias filed their response in opposition to Spohn's plea to the jurisdiction arguing that Spohn's contract with Nueces County Hospital District (NCHD) did not include operation of the Christus Hospital Corpus Christi-Shoreline (Shoreline) hospital, where Jamie received his care.

After hearing argument and reviewing the evidence attached to each parties' pleadings, the trial court denied the plea to the jurisdiction. This interlocutory appeal followed.

## II. PLEA TO THE JURISDICTION

### A. Standard of Review and Applicable Law

---

[1] Appellees' original petition also included claims against Patience Sterner McKeever, as Personal Representative and Administrator of the Estate of Clark Dickson McKeever, M.D.; Clark D. McKeever, M.D., P.A.; and McKeever Clinic, P.L.L.C. The appellees have settled their claims with these defendants, and they are not parties to this appeal.

The question of whether a party is entitled to governmental immunity implicates the trial court's subject matter jurisdiction. *See Harris Cty. Hosp. Dist., v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a trial court has subject matter jurisdiction over a claim is a question of law that this Court reviews de novo. *Tomball*, 283 S.W.3d at 842.

Spohn argues that its contractual relationship with NCHD entitles it to immunity pursuant to §§ 285.071 and 285.072 of the health and safety code. TEX. HEALTH & SAFETY CODE ANN. §§ 285.071, 285.072. It is undisputed that hospital districts are governmental units entitled to immunity, and individuals filing suit against a hospital district must comply with the notice requirements for filing suit against a governmental unit under the TTCA. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3); *Martinez v. Val Verde Cty. Hosp. Dist.,* 140 S.W.3d 370, 371 (Tex. 2004). Section 285.071 of the health and safety code defines a "hospital district management contractor" as a "nonprofit corporation, partnership, or sole proprietorship that manages or operates a hospital or provides services under contract with a hospital district that was created by general or special law." TEX. HEALTH & SAFETY CODE ANN. § 285.071. The statute also states that:

> A hospital district management contractor in its management or operation of a hospital under a contract with a hospital district is considered a governmental unit for purposes of Chapters 101, 102, and 108, Civil Practice and Remedies Code, and any employee of the contractor is, while performing services under the contract for the benefit of the hospital, an employee of the hospital district for the purpose of Chapters 101, 102, and 108, Civil Practice and Remedies Code.

*Id.* § 285.072; *see also Christus Spohn Health Sys. Corp. v. Ven Huizen*, No. 13-10-00400-CV, 2011 WL 1900174, at *2–3 (Tex. App.—Corpus Christi–Edinburg May 19, 2011, pet. denied) (mem. op.).

**B.      Analysis**

**1.      Entitlement to Immunity**

An entity must satisfy three requirements to achieve status as a "hospital district management contractor" under the statute.  TEX. HEALTH & SAFETY CODE ANN. § 285.071. First, the entity must be a non-profit corporation, partnership, or sole proprietorship.  *Id*. Second, the entity must manage or operate a hospital or provide services under a contract with a hospital district.  *Id*.  Third, the hospital district must have been created by general or special law.  *Id*.

There is no dispute that Spohn presented uncontroverted evidence that it is a Texas non-profit corporation, meeting the first requirement.   As to the second requirement, the evidence presented in support of Spohn's plea to the jurisdiction included an affidavit of Jonny F. Hipp, the Administrator/Chief Executive Officer of NCHD. He stated that, in 1996, NCHD and Spohn entered into a master agreement and a lease agreement whereby Spohn agreed to operate and manage NCHD's hospitals.  Per the 1996 master agreement, attached to Spohn's motion, the term "hospitals" did not include Shoreline.  According to Hipp, the 1996 master agreement was amended four times between 1996 and 2012, and the lease agreement was amended twice between 1996 and 2012.

In conjunction with the master agreement and the lease agreement, Spohn and NCHD also entered into an indigent care agreement, wherein Spohn is recognized as the exclusive provider of medical aid and hospital care to the indigent residents of Nueces County.  Hipp averred that the NCHD Indigent Health Care Program Handbook is referenced in the indigent care agreement, and that the handbook designates the

4

hospitals "as providers for inpatient, outpatient, and emergency care," collectively referred to as "the Nueces County Facilities," to include Shoreline.

In 2012, NCHD and Spohn entered into a membership agreement wherein the master agreement, lease agreement, and indigent care agreement were all terminated. The membership agreement provided that:

> [T]he parties determined that it is in their mutual interest to transition to a joint membership structure of [CHRISTUS Spohn Health System Corporation (Spohn)] by CHRISTUS Health and [NCHD], such that CHRISTUS Health and [NCHD] will be Members of Spohn, consistent with the related amended organizational documents of Spohn and the continued operation of Spohn as the public, safety-net hospital in Nueces County, Texas.
>
> . . .
>
> WHEREAS, Spohn serves as the public, safety-net hospital in Nueces County, Texas by providing care to the low-income and indigent population in Nueces County at the CHRISTUS Spohn Hospital Corpus Christi–Memorial, CHRISTUS Spohn Hospital Corpus Christi–Shoreline and CHRISTUS Spohn Hospital Corpus Christi–South hospital facilities (these Spohn hospital facilities along with the clinics, medical offices, and other health care facilities on the campuses of or affiliated with such Spohn hospital facilities that share common Medicare and Medicaid provider agreements are collectively referred to herein as the "Nueces County Facilities") consistent with the provisions set forth in [Chapter 281 of the Texas Health and Safety Code], the Indigent Health Care Act, and in accordance with the [Indigent Care Agreement] and [NCHD's] policies.

Spohn argues that the membership agreement provides for Spohn's operation and management of Shoreline as a hospital district management contractor. The Gracias, however, respond that Shoreline was owned and operated by Spohn prior to any agreements with NCHD, and that the membership agreement does not alter that ownership right. Their argument is that Shoreline "cannot somehow become operated pursuant to an agreement where there is no change in its operation." Specifically, they

5

contend that Spohn is not a hospital district management contractor because its operation of Shoreline was not "exclusively pursuant to its contract with [NCHD]."

The statute states that a "hospital management contractor . . . provides services *under a contract* with a hospital district . . . ." TEX. HEALTH & SAFETY CODE ANN. § 285.072 (emphasis added); *see also Ven Huizen*, 2011 WL 1900174, at *6. There is nothing in the statute that states that a hospital management contractor cannot own the hospital that is being operated under the contract in order to come within the purview of the statute. The Gracias assert that Spohn's ownership and operation of Shoreline, before and after the contract between Spohn and NCHD was entered into, means that Spohn did not operate or manage Shoreline "under a contract" with NCHD as required by the statute. *See* TEX. HEALTH & SAFETY CODE ANN. § 285.072. The Gracias do not cite authority establishing that Spohn cannot own Shoreline and simultaneously operate it under a contract with NCHD. Instead, Spohn established that there were contracts in existence between Spohn and NCHD that vested Spohn with the duty and responsibility of assuming sole control of the management of Shoreline. *See id*.; *see also Ven Huizen*, 2011 WL 1900174, at *5.

The Gracias also argue that Spohn's contract with NCHD to provide indigent care to residents of Nueces County, including at Shoreline, does not extend to the services provided to Jamie. Jamie was not an indigent patient, and therefore, the Gracias urge that his care does not fall within the contracted services between Spohn and NCHD. We have previously declined to make an exception to the statute with respect to the treatment of indigent and non-indigent patients in stating that

> [t]here is nothing in the plain language of the statute that delineates between
> the types of care received at a hospital that is being managed for the

6

hospital district. The record shows that Spohn was solely responsible for managing, operating and providing services at Memorial to both indigent and non-indigent patients. We see no language excepting those patients who pay for their care from the statute, and it is not our province to create such an exception when the statutory language is not ambiguous or unclear.

*Ven Huizen*, 2011 WL 1900174, at *8. Here, according to the evidence, Spohn is solely responsible for the management, operation, and services provided at Shoreline, consistent with its contract with NCHD. As such, Spohn established its right to immunity pursuant to §§ 285.071 and 285.072. *See id*.

## 2. Waiver of Immunity

Spohn argues that the Gracias did not plead any claims that would come within the purview of the TTCA's waiver of immunity. The only relevant provision of the TTCA is § 101.021(2), which states that a governmental entity is liable for personal injury and death caused by a condition or use of tangible personal or real property if the government would be liable to a claimant if it were a private person. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). The Gracias pleaded that Spohn and nurses were negligent by failing to recognize, report, or timely treat Jamie's post-operative bleeding, causing Jamie's global hypo-perfusion. They did not plead that the injuries were caused by the condition or use of tangible personal or real property. The failure to properly assess a patient's condition is not a claim based on the use of tangible personal or real property. *See Clemons v. Citizens Med. Ctr.*, 54 S.W.3d 463, 468 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); *see also Ven Huizen*, 2011 WL 1900174, at *9. As such, the Gracias did not establish that Spohn's immunity was waived. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

## 3. Opportunity to Amend Pleadings

7

Having determined that the Gracias failed to state a claim for which Spohn's sovereign immunity is waived, this Court must decide whether the Gracias's petition is incurably defective or whether it may be amended to allege a cause of action within the trial court's jurisdiction. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Kelso v. Gonzales Healthcare Sys.*, 136 S.W.3d 377, 383 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.). Claims that are incurably defective or affirmatively negate the existence of jurisdiction may be dismissed without allowing the plaintiff an opportunity to amend. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

The Gracias contend that they should be given an opportunity to amend their pleadings "to allege additional facts regarding the care in the post anesthesia care unit which involved the use of tangible personal property." The Gracias do not provide any additional information about what, if any, tangible personal property may have been used. Their live pleading alleged negligence based on the "acts and omissions" of Spohn and its nurses. No allegation in their pleadings references the use of any tangible personal property. Accordingly, these allegations are incurably defective; the Gracias cannot cure them by pleading more detailed facts. *See id.* at 840; *Univ. of Texas M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 880–81 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see also Univ. of Texas at Brownsville v. Ramos*, No. 13-11-00302-CV, 2012 WL 256137, at *7 (Tex. App.—Corpus Christi–Edinburg Jan. 26, 2012, pet. denied) (mem. op.). Consequently, no purpose would be served by remanding these claims to the trial court. *See Thomas v. Long*, 207 S.W.3d 334, 338 (Tex. 2006).

Spohn's sole issue is sustained.[2]

### III.    CONCLUSION

The order of the trial court denying Spohn's plea to the jurisdiction is reversed and we render judgment dismissing this case.  *See* TEX. R. APP. P. 43.2(c).

                                                            NORA L. LONGORIA
                                                            Justice

Delivered and filed the
26th day of August, 2019.

---

[2] Because we have found that Spohn did not waive its sovereign immunity, we need not address the issue of notice under the TTCA as raised by the Gracias in their appellate brief.  *See Cervantes v. McKellar*, 424 S.W.3d 226, 237 (Tex. App.—Texarkana 2014, no pet.).